**RHODE ISLAND HOSPITAL,
Plaintiff, Appellant,**

v.

**Joseph A. CALIFANO, etc., et al.,
Defendants, Appellees.**

**No. 78–1161.**

United States Court of Appeals,
First Circuit.

Argued Sept. 11, 1978.
Decided Oct. 27, 1978.

Thomas D. Gidley, Providence, R.I., with whom Thomas R. Courage, and Hinckley, Allen, Salisbury & Parsons, Providence, R.I., were on brief, for plaintiff, appellant.

Lawrence E. Burstein, Asst. Regional Atty., Dept. of Health, Ed. and Welfare, Boston, Mass., with whom Everett C. Sammartino, Asst. U.S. Atty., Providence, R.I., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and DUMBAULD *, Senior District Judge.

COFFIN, Chief Judge.

This case comes to us from the district court's denial of subject matter jurisdiction in an action by Rhode Island Hospital, as a provider of Medicare and Medicaid services, to have declared unconstitutional certain regulations and a schedule of reimbursement limits promulgated pursuant to § 1861(v)(1)(A) of Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395pp. After careful consideration of the intricate

* Of the Western District of Pennsylvania, sitting by designation.

statutory scheme and the substantial case law that has recently developed in this area, we conclude that appellant's failure to pursue the administrative remedies of the Act precluded subject matter jurisdiction in the district court. Accordingly, we affirm.

## I.

### Background and Issues

In 1965, Congress enacted Federal Health Insurance for the Aged, known as Medicare, as Title XVIII of the Social Security Act. Rhode Island Hospital, as a "provider of services", 42 U.S.C. § 1395x(u), is reimbursed for the "reasonable cost", of its Medicare services, 42 U.S.C. § 1395b, from a federal trust fund channeled through a fiscal intermediary, here Blue Cross of Rhode Island. The Medicare Act, in 42 U.S.C. § 1395x(v)(1)(A), excludes costs found to be unnecessary and authorizes regulations which reimburse up to established ceilings in advance for estimated costs. Pursuant to this directive, the Secretary promulgated such regulations, 20 C.F.R. § 405.460, and published a proposed Schedule of Limits, periodically revised, for hospital costs. See 39 Fed.Reg. 20168 (1974); 40 Fed.Reg. 17190, 23622 (1975); 41 Fed.Reg. 26992 (1976); 42 Fed.Reg. 35496, 53675 (1977).

Under this system, a hospital is located within a Standard Metropolitan Statistical Area (S.M.S.A.) and a group number assigned to the S.M.S.A. based on the area's per capita income. Each group is then subdivided into cells based on the number of beds available in the hospital. The reimbursement ceilings for the cell were determined as follows: cost data were acquired from each hospital in the cell; the 80th percentile of these costs was ascertained, subjected to various computations, and became the limit beyond which expenditures were presumed to be unreasonable and thus not reimbursable. Generally speaking a hospital in a higher per capita income area is reimbursed at a higher rate than a hospital of comparable size in a lower per capita income area. The regulations establish an exception process for challenging the amounts computed under this system at 20 C.F.R. § 405.460(e)(f).

The reimbursement limit established by this system for Rhode Island Hospital during the twelve month period beginning October 1, 1977 is $112.83 per diem. The Hospital's budgeted expenditures for this period are $130.47 per diem, leaving a deficit of $17.64 per diem per patient. The result is a projected loss of $1,559,094 in Medicare costs for the twelve months. The Hospital has not filed an exception, claiming that it would be futile for it to do so.

Instead, the Hospital sought to have these regulations, promulgated under section 222 of Pub.L.No.92–603, at 20 C.F.R. § 405.460(a)-(d) (1977), and their accompanying Schedule of Limits declared unconstitutional. The Hospital argued that these limitations on reimbursement constitute a taking of its property without due process and without just compensation, and that they discriminate against hospitals located in lower per capita income areas without rational basis, in violation of the equal protection of the laws. It further contended that the limits were arbitrary and capricious.

The Hospital complains as well of the impact of these Medicare reimbursement ceilings, incorporated by reference in 42 U.S.C. § 1396a(a)(13)(D), on its reimbursement by the states for Medicaid expenditures. The Medicaid system, embodied in Title XIX of the Social Security Act of 1965, provides assistance to those who are economically unable to meet the cost of necessary medical care, including the aged, the blind, the disabled and families with dependent children. It is funded by the Secretary of Health, Education and Welfare, but unlike Medicare, is administered by the states rather than the federal government. *Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 950 (5th Cir. 1977); *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 660 (5th Cir. 1971).

State medical assistance plans which satisfy Title XIX statutory requirements, 42 U.S.C. § 1396a(a)(1)–(37), are in part financed by federal matching funds, and

thus become subject to certain federal controls, one of which is at issue here. Section 1396a(a)(13)(D) of Title XIX states that a state plan must provide:

> "for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards, consistent with . . . [42 U.S.C.S. § 1320a–1], which shall be developed by the State and reviewed and approved by the Secretary and . . . included in the plan, *except that the reasonable cost of any such services as determined under such methods and standards shall not exceed the amount which would be determined under . . . [42 U.S.C.S. § 1395x(v)] as the reasonable costs of such services for purposes of title XVIII . . . ."* (Emphasis added.)

The challenged regulations and Schedule of Limits promulgated under § 1395x(v)(1)(A) of Title XVIII therefore apply as well to Medicaid payments. Accordingly, the Hospital projects a potential Medicaid loss for the same twelve month period of $219,792, allegedly in violation of its constitutional rights.

## II.

### *Jurisdiction of the Medicare Dispute*

The Hospital asserted below and argues on appeal that the district court had federal question jurisdiction under 28 U.S.C. § 1331(a).[1] The Secretary in response argues that section 1331(a) jurisdiction is barred by § 205(h) of the Social Security Act, 42 U.S.C. § 405(h), found in Title II,

but expressly made applicable to Title XVIII, the Medicare Act, by 42 U.S.C. § 1395ii.

Section 205(h) reads in relevant part: "No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 [28 U.S.C. § 1331] to recover on any claim arising under this subchapter."

This provision applies "with respect to [Title XVIII] to the same extent as [it is] applicable with respect to Title II." 42 U.S.C. § 1395ii.

"The extent to which [§ 205(h)] is applicable with respect to Title II" was considered by the Supreme Court in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In *Salfi*, the plaintiff class, composed of surviving wives and stepchildren of deceased wage earners, challenged the constitutionality of duration-of-relationship eligibility requirements under Title II of the Social Security Act. *Id.* at 752–53, 95 S.Ct. 2457. The Court held that the district court was barred by the last sentence of § 205(h), quoted *supra*, from exercising § 1331 jurisdiction. Describing this sentence as "more than a codified requirement of administrative exhaustion", and emphasizing that *"no* action shall be brought under § 1331", the Court required the plaintiffs to resort to the Act's provisions for judicial review of the Secretary's decision in that case, 42 U.S.C. § 405(g).[2]

---

**1.** As the parties recognize, the Administrative Procedure Act "does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977).

**2.** 42 U.S.C. § 405(g) in part provides:

> "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further times as the Secretary may allow. Such action

shall be brought in the district court of the United States . . . ."

Because the unnamed class members had failed even to file an application for review with the Secretary, "much less [receive] any decision, final or otherwise, review of which is sought", they failed to satisfy the requirements for jurisdiction under 42 U.S.C. § 405(g). "Other sources of jurisdiction being foreclosed by 405(h)", their complaint should have been dismissed. 422 U.S. at 764, 95 S.Ct. at 2466. The situation of the named appellees was different. They had presented their claims for benefits to the local and regional offices but had failed to fully exhaust their remedies before the Secretary. *Id.* at 764–65, 95 S.Ct. 2457. The Court

It seems to us that the plain language of 42 U.S.C. § 405(h) and § 1395ii, read in tandem, and the Supreme Court's interpretation of the former in *Salfi* bar the finding of § 1331 jurisdiction in this case. Our review gains support from a recent case in which the Association of American Medical Colleges sought to challenge the same cost limitation regulations at issue here. In *Association of American Medical Colleges v. Califano*, 186 U.S.App.D.C. 270, 569 F.2d 101 (1977), the court, relying on *Salfi*, held that "appellant's failure to pursue the Act's remedial administrative procedures that culminate in judicial review left the District Court without subject-matter jurisdiction over the action." *Id.* 186 U.S.App.D.C. at 272, 569 F.2d at 103.

The Hospital argues, however, that neither the language of the statute itself, nor the Supreme Court's directive in *Salfi*, as read by others than the District of Columbia Circuit, precluded the district court from hearing its claim. We first consider its attempt to confine the reach of section 405(h) as it applies to disputes under the Medicare statute, Title XVIII.

Faced with the language of 42 U.S.C. § 1395ii that applies § 405(h) to Title XVIII to the same extent that that section applies to Title II disputes, the Hospital nonetheless maintains that the impact of § 405(h) on Title XVIII can be determined only by a detailed exploration of Title XVIII itself. In 42 U.S.C. § 1395ff, provision is made for resolution of three types of Medicare controversies: disputes as to whether an individual is covered by Medicare; disputes concerning the amount of benefits to which an individual is entitled; and disputes as to whether a provider is eligible to participate in the Medicare program. The Hospital correctly notes that in these Title XVIII contexts, the judicial review mechanisms of § 405(g), *see* note 2, *supra*, are expressly carried over and made available, and reasons that:

refused to "bar the Secretary from determining in particular cases that full exhaustion of internal review procedures is not necessary for a decision to be 'final' within the language of § 405(g)", *id.* at 766–67, 95 S.Ct. at 2467, and

"The express incorporation of these Title II procedural provisions with respect to the types of disputes enumerated in Section 1395ff make it impossible to avoid the conclusion that Section 405(h), incorporated to the extent 'applicable,' was intended to apply whenever *other* Title II provisions providing for hearing and judicial review, are expressly made applicable to Title XVIII controversies."

Because § 405(g) judicial review is not provided for resolution of provider reimbursement disputes, § 405(h), the argument concludes, is inapplicable in the instant case as well.

We reject this imaginative reading of Congressional intent. The Hospital ignores the plain directive of § 1395ii that § 405(h) applies to Title XVIII to the same extent that it applies to Title II. Its quest into Title XVIII to determine the applicability of § 405(h) is therefore unnecessary and unenlightening. Moreover, there is no reason to conclude that § 405(h) enjoys such a symbiotic relationship with § 405(g) that the former's limitation on judicial review to that which is provided in the Act, can *only* be applied when § *405(g)* is the particular review provision made available. While courts have hesitated to read *Salfi* and § 405(h) to foreclose all avenues of judicial review when the Act provides for *no* administrative process leading to judicial review and constitutional questions are at issue, *see Califano v. Sanders*, 430 U.S. 99, 108–09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Dr. John T. MacDonald Foundation, Inc. v. Califano*, 571 F.2d 328, 331–32 (5th Cir. 1978); *Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d 1077, 1079 (1st Cir. 1977); *Trinity Memorial Hospital v. Associated Hospital Service*, 570 F.2d 660, 664–65 (7 Cir. 1977), we are not faced with such a situation here.[3] The Medicare Act, in 42

found jurisdiction as to the named appellees under § 405(g). *Id.* at 767, 95 S.Ct. 2457.

3. This circuit has not "determine[d] the hypothetical question whether jurisdiction would attach to hear a constitutional challenge to the

U.S.C. § 1395oo, itself provides for the establishment of a Provider Reimbursement Review Board to hear reimbursement disputes. And in § 1395oo (f), we find the functional equivalent of § 405(g) in this context, expressly authorizing judicial review of final decisions of the Board and of any reversal, affirmance or modification of any Board decision by the Secretary. *See* Pub.L.No. 93–484, § 3(a)-(b), 88 Stat. 1459 (Oct. 26, 1974).[4]

We next address the Hospital's arguments that there is case law reading *Salfi* restrictively so as to preclude its application to this case. In *St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283 (8th Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976), the Eighth Circuit drew a distinction between a provider's attempt to obtain payments pursuant to the Medicare Act, in which *Salfi* bars jurisdiction, and its due process challenge to the procedures adopted by the Secretary to hear Medicare reimbursement disputes, *id.* at 291. It refused to read *Salfi* to bar a suit seeking a constitutionally adequate hearing, *id.* at 292, a claim collateral to one for benefits under the Act.

That case is distinguishable for two important reasons. First, *St. Louis University* involved an attack on *hearing procedures* employed by the agency to determine whether the particular claimant was entitled to reimbursement, *id.. See Mathews v. Eldridge*, 424 U.S. 319, 330–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The instant challenge, in contrast, is not collateral to a claim for reimbursement, despite the Hospital's protestations to the contrary. It is a substantive constitutional attack against the reimbursement provisions of the Medicare Act, 20 C.F.R. § 405.460(a)-(d) and its Schedule of Limits, in essence, asserting that the reimbursement provided by those provisions does not cover its "reasonable costs". Rhode Island Hospital's argument is not that the mechanisms for review of its claim constitute a decision process that violates procedural due process. We recently recognized this distinction between a challenge to the validity of a Medicare provision and a challenge to the hearing procedures that govern the statute's application to a particular claimant. *See Cervoni v. Secretary of Health, Education and Welfare*, 581 F.2d 1010 at 1017 (1st Cir. 1978).[5]

---

[Medicare Act] when judicial review is not otherwise available." *Cervoni v. Secretary of Health, Education and Welfare*, (1978) No. 77–1345, 581 F.2d 1010 at 1017. And because we find that 42 U.S.C. § 1395oo (f) provides for review of this dispute, we need not answer that hypothetical question here.

4. We are unpersuaded as well by the Hospital's suggestions that § 405(h) applies only to claims for monetary benefits and thus is inapposite to the Hospital's action for injunctive relief. We decline to read that section which bars an "*action . . . to recover on any claim*", so technically (emphasis added). In *Salfi*, § 405(h) was applied to an action for declaratory and injunctive relief as well as damages for wrongfully withheld benefits, 422 U.S. at 755, 95 S.Ct. 2457, and was held to bar completely the unnamed appellees' suit. *See Dr. John T. MacDonald Foundation v. Califano, supra*, 571 F.2d at 331; *Association of American Medical Colleges v. Califano, supra*, 186 U.S.App.D.C. at 275, 569 F.2d at 106.

In addition, the Hospital argues that the first sentence of § 405(h)—"[t]he findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing"—indicates that the reach of § 405(h) is limited to actions by individuals and not institutions. We reject this limiting construction, taking note of the long line of cases that have applied § 405(h) to actions brought by providers—institutions—under the Medicare Act. *See, e. g., Dr. John T. MacDonald Foundation, Inc. v. Califano, supra; Trinity Memorial Hospital v. Associated Hospital Service, supra*, 570 F.2d at 660; *Association of American Medical Colleges v. Califano, supra; Milo Community Hospital v. Weinberger*, 525 F.2d 144 (1st Cir. 1975).

5. In *Cervoni*, we considered a physician's assertion that the procedures used to apply the Medicare Act did not comport with due process. Because we concluded that no colorable constitutional claim had been made, the question whether § 405(h) should be read to bar a procedural due process claim was not reached. *Cervoni, supra*, at 1017–1019.

Our view finds further support in *Humana of South Carolina, Inc. v. Califano*, Nos. 76–1953, 76–2125 (D.C.Cir. Sept. 18, 1978). In the District of Columbia Circuit's most recent discussion of the impact of § 405(h) on the Medicare Act, it distinguished between "statutory and constitutional contentions . . . directed at establishing error in the Secretary's views of what limits on reimbursement Congress intended or at demonstrating a fundamental un-

Second, "and more importantly", 537 F.2d at 292, the court in *St. Louis Hospital* emphasized that the Act provided no adequate alternative to the defective hearing procedures by which the constitutional challenge at issue could eventually move into the courts, *id.*, noting that the Provider Reimbursement Review Board, § 1395*oo*, was not yet in existence during the relevant accounting periods, *id.* at 289 n.8. The Board is now available, however, and § 1395*oo*(f) expressly authorizes judicial review of provider reimbursement disputes, at which time a constitutional challenge can be heard by the courts. Rhode Island Hospital's situation is critically distinguishable from that in *St. Louis Hospital* and thus falls squarely within *Salfi* in which judicial review was also made available by the Act, in § 405(g). *See Cervoni v. Secretary of Health, Education and Welfare, supra*, at 1014.

In a further attempt to rescue its case from *Salfi* and § 405(h), the Hospital challenges the adequacy of the Act's administrative procedures that culminate in judicial review under § 1395*oo*(f). Two flaws are alleged, first that the administrative process is unlikely to be resolved in favor of the Hospital and is fraught with burdensome delays, and more fundamentally, that that process cannot yield the relief it seeks—a ruling that the challenged regulations are violative of the Constitution. Although the Hospital may have accurately depicted an administrative process that we would characterize as less than ideal, neither flaw would render *Salfi* inapplicable and justify § 1331 jurisdiction in this case. *See Association of American Medical Colleges v. Califano, supra*, 186 U.S.App.D.C. at 277 & n.63, 569 F.2d at 108 & n.63.

A brief description of the administrative procedures for resolving provider reimbursement disputes is necessary at this point. Apparently, two administrative avenues of review exist. First, a provider of services may, pursuant to 20 C.F.R. § 405.-460(e), file an "exception", enumerated in subpart (f) of that section, objecting to the cost limits established by the intermediary under the challenged regulations, 20 C.F.R. § 405.460(a)-(d). The intermediary's determination may then be reviewed by the Provider Reimbursement Review Board of § 1395*oo* and in turn by the Secretary, if he so chooses.

The Hospital maintains that there is little likelihood that it would be granted any of the specified exceptions to the imposed cost ceilings, 20 C.F.R. § 405.460(f). It describes the prospect of an (f)(1) reclassification as a "complete myth", and asserts that at most it may be entitled to $650,000 under the burdensome (f)(2) atypical exception. The remaining exceptions it describes as clearly unavailable. Whether or not the Hospital accurately predicts the outcome of the exception process before its intermediary, the Provider Reimbursement Review Board, and possibly the Secretary, we do not believe that it is our role to second guess the administrative process that has been established by the Act. The determination of the availability of these exceptions is a matter properly vested with the administrative expertise of the agency. Had the Hospital's claims been pursued through the administrative channels,

> "[t]he Secretary would . . . have been assured the opportunity to determine whether the claims were invalid for

reasonableness in benefit amounts" and a "procedural attack" whose "gravamen is simply that the Secretary failed to adhere to the methodology generally applicable to any rulemaking effort." *Id.* at 20. The provider had made both types of claims. The court likened the first situation to its earlier decision in *American Medical Colleges v. Califano, supra*, 186 U.S.App.D.C. 270, 569 F.2d 101, which found § 1331 jurisdiction to hear "suits seeking eventual realization of provider-cost reimbursement under the Medicare Act" barred by § 405(h).

*Humana of South Carolina, Inc. v. Califano, supra*, slip op. at 18–20. With respect to the second situation, however, the court stated "that when suit is brought simply to vindicate an interest in procedural regularity, Section 205(h) is not summoned into play", *id.* at 21. Accordingly, the court took jurisdiction to decide whether the rulemaking process for the challenged return-on-equity regulation was exempt from the strictures of the Administrative Procedure Act. *Id.* at 23.

other reasons or cognizable under other theories, and a reviewing court would have been assisted in its scrutiny of the challenged regulation by its application to particular facts." *Association of American Medical Colleges v. Califano, supra,* 186 U.S.App.D.C. at 279, 569 F.2d at 110; *see Weinberger v. Salfi, supra,* 422 U.S. at 762, 95 S.Ct. 2457.

The delay inherent in the administrative process is also challenged. The Hospital argues that the exception process, subjected to "the provisions of Subpart R of this Part 405", 20 C.F.R. § 405.460(e), need not move forward until a cost report for the 1977–1978 fiscal year has been filed, at the close of the accounting year, *see* 20 C.F.R. § 405.406(b). The Hospital may indeed be correct in its description of the administrative review established by the regulations. Subpart R, 20 C.F.R. §§ 405.1801 *et seq.,* conditions further review on an "intermediary determination", § 405.1835(a)(1), and an "intermediary determination" by definition is afforded "a provider of services which has filed a cost report". Section 405.1801.

The second avenue of administrative review appears to suffer from the same defect of delay. The provider of services may also seek a hearing with respect to its cost report before the Provider Reimbursement Review Board, without pursuing a § 405.-460(f) exception, after it has received a final determination of its fiscal intermediary. 20 C.F.R. § 405.1811. *See Association of American Medical Colleges v. Califano, supra,* 186 U.S.App.D.C. at 279, 569 F.2d at 110. Thus, as far as we can determine from the intricate statutory regulations, a cost report, filed at the close of the fiscal year is once again the triggering event, making administrative review unavailable until then.

It strikes us as somewhat anomalous to establish a system of payment for projected costs, *see* 20 C.F.R. § 405.402(b)(1), and then preclude administrative review until the period covered by the projections has passed. However, we do not find that the delay renders the administrative process so inadequate that we should consider following those cases that have hesitated to apply *Salfi* when *no* administrative process leading to judicial review of constitutional questions was available. *See, e. g., Trinity Memorial Hospital v. Association Hospital Service, supra,* 570 F.2d at 664–65.

In *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), the Supreme Court considered petitioners' objections that the Anti-Injunction Act, § 7421(a) of the Internal Revenue Code of 1954, forced them to exhaust administrative remedies which entailed serious delay. The Court sharply distinguished between "a case in which an aggrieved party has no access at all to judicial review" and "avenues of review . . . [that] present serious problems of delay." *Id.* at 746–47, 94 S.Ct. at 2050. Without suggesting that the delay in this case is as serious as that in *Bob Jones University, supra,* we likewise decline to collapse the distinction between delayed review and no review at all. The review process established by the Act for provider reimbursement disputes, whether or not "the best that can be devised", *id.* at 747, 94 S.Ct. at 2051, is sufficient to mandate application of *Salfi* and § 405(h).

The Hospital's final contention is that *Salfi* does not bar this suit because the administrative process cannot produce the kind of relief it seeks—a determination of the constitutional validity of these reimbursement limitations. It is true that both the Intermediary and the Provider Reimbursement Review Board are without statutory authority to review the legality or constitutionality of the regulations, 20 C.F.R. §§ 405.1829, 405.1867, and the Secretary, who could alter the regulatory scheme is not required to review the decision of the Board, 20 C.F.R. § 405.1875(a). Nor can he realistically be expected to effect a broad change in the regulatory scheme "at the behest of a single aid recipient". *See Mathews v. Eldridge, supra,* 424 U.S. at 330, 96 S.Ct. at 900. However, on an earlier occasion, we noted that *Salfi's* restrictions on judicial review to that provided in the Act "is not made inapplicable by reason of a constitutional challenge, beyond the power

of the Secretary to take remedial action." *Milo Community Hospital v. Weinberger,* 525 F.2d 144, 147 (1st Cir. 1975). Accordingly, we are in agreement with the District of Columbia Circuit in *Association of American Medical Colleges, supra,* 186 U.S.App. D.C. at 277, 569 F.2d at 108, which likewise found unpersuasive a provider's attempt to distinguish *Salfi* on this basis:

> "The *Salfi* plaintiffs clearly could not have obtained from the Secretary a ruling of unconstitutionality of a statute that the Secretary was bound to enforce, yet their action was denied federal-question jurisdiction, and resort to the administrative process was required. Appellant's contention that the availability of federal-question jurisdiction of this lawsuit depends upon whether the issues in dispute can be dealt with better at an administrative hearing than in a judicial proceeding must accordingly fail."

▮ The clear mandate of *Salfi* is that § 405(h) is "something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility . . . ." 422 U.S. at 766, 95 S.Ct. at 2467; *see Humana of South Carolina, Inc. v. Califano, supra,* Nos. 76–1953, 76–2125, slip op. at 15. The Hospital's attempts to render *Salfi* and § 405(h) inapplicable to this case by challenging the adequacy of the review provided in § 1395 *oo* therefore must fail. We conclude, consistent with *Salfi,* that § 405(h), incorporated into the Medicare Act by § 1395ii, limits jurisdiction over this Title XVIII dispute to that provided by the Act, here, § 1395*oo* (f). And because the Hospital has not obtained "a final decision of the Board, or any reversal, affirmance, or modification by the Secretary", the jurisdictional prerequisite established by § 1395*oo* (f),[6] we hold that the district court properly found that it was without jurisdiction to hear the Medicare dispute.

### III.

### *Jurisdiction of the Medicaid Dispute*

As discussed earlier, the challenged Medicare reimbursement ceilings have been incorporated by reference into the Medicaid Act, Title XIX, at 42 U.S.C. § 1396a(a)(13)(D), thereby holding the Hospital's reimbursement for Medicaid costs under a state plan to the same designated limits. The Hospital argued before the district court, and on appeal, that regardless of our disposition of its challenge to the Medicare Act, jurisdiction clearly lies to hear the Medicaid dispute. This is so, it maintains, because § 405(h), which limits judicial review to that provided by the Act, and made applicable to Title XVIII by 42 U.S.C. § 1395ii, has not been incorporated into Title XIX. We agree, as did the court below, that § 405(h) presents no jurisdictional bar in cases arising under Title XIX.

---

**6.** It is well established that there is flexibility in the term "final determination". Full exhaustion of the administrative remedies provided by the Act in a particular case may not further administrative purposes and therefore on occasion has been waived. *See Mathews v. Eldridge,* 424 U.S. 319, 328–29, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi, supra,* 422 U.S. at 764–67, 95 S.Ct. 2457.

However, "[t]he nonwaivable element is the requirement that a claim . . . shall have been presented to the Secretary. Absent such a claim there can be no 'decision' of any type. And some decision by the Secretary is clearly required by the statute." *Mathews v. Eldridge, supra,* 424 U.S. at 328, 96 S.Ct. at 899.

The situation of the Hospital in this case therefore is akin to that of the unnamed class members in *Salfi* who had failed to even file an application for review of the Secretary, "much less [receive] any decision, final or otherwise, review of which is sought" and whose case accordingly was dismissed. *See* note 2, *supra.* Although the Hospital apparently did take advantage of its opportunity to comment on the proposed regulations and limits and, in a number of meetings attempted to have HEW officials look at and change the regulations, as the district court found: "[the Hospital] has not made any such application [for an exception], nor has [it] submitted this controversy to the Secretary of the Department of Health, Education and Welfare for his determination in any other fashion." The Hospital does not argue that it has satisfied, even preliminarily, the statutory prerequisites for judicial review under § 1395*oo* (f), but rather that it should not be required to satisfy that section, given the defects of the administrative process.

*See Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 949 (5th Cir. 1977).

The district court refused to take jurisdiction over the Medicaid claim, however, for two reasons. First, because federal sums appropriated for Medicaid are paid to the states and not to providers through their fiscal intermediary and because states establish the "methods and procedures relating to the utilization of, and the payment for, care and services available under the plan", 42 U.S.C. § 1396a(a)(30), the Hospital's disagreement, the court believed, was with the state and not with the reimbursement limits as established by the federal statute. We are not persuaded that jurisdiction should be denied on this basis. The Hospital's quarrel, realistically, is with the reimbursement limits promulgated pursuant to a federal statute and imposed on the states by a federal statute. *See* 42 U.S.C. § 1396a(a)(13)(D); 45 C.F.R. § 250.30(b); *see also Johnson's Professional Nursing Home v. Weinberger*, 490 F.2d 841 (5th Cir. 1974); *Virginia Hospital Association v. Kenley*, 427 F.Supp. 781 (E.D.Va.1977).

Second, the district court rejected the Hospital's assertion that part of its suit arises under Title XIX, the Medicaid Act. It reasoned that the Hospital's Title XIX challenges was essentially an attack on the *Medicare* reimbursement limits, that the entirety of its claim arose under Title XVIII and thus was subject to the limitations of that Title, namely § 405(h). While we cannot say as confidently as did the court below that "[t]he only relation this action bears to [the Medicaid] Act is Plaintiff's mere status as a provider of Medicaid services", we are persuaded that this case should be viewed as one arising under Title XVIII. We do not reach this conclusion without some difficulty, mindful that the Title XVIII limits have been incorporated into Title XIX and thus have a tangible impact on the Hospital's Medicaid reimbursements.

▉ Were we to assume § 1331 jurisdiction over the Hospital's Medicaid claim we would find ourselves in the peculiar posture of hearing a case that consists entirely of a challenge to the limits promulgated under Title XVIII, when we are expressly barred by Title XVIII from entertaining that challenge at this time. To so allow Title XIX to become the back door into Title XVIII, which has barred this case from entrance, would result in an automatic circumvention of the Title XVIII administrative machinery when its cost limitations have been adopted by Title XIX and the provider, as will usually be the case, furnishes services under both Titles.

The situation in this case is significantly different from *Springdale Convalescent Center v. Mathews, supra*, 545 F.2d at 943, upon which the Hospital relies. In *Springdale*, the court found § 1331 jurisdiction over a provider's suit to enjoin the Secretary from suspending its Medicaid provider status, occasioned by the provider's refusal to reimburse the Secretary for alleged Medicare overpayments. 545 F.2d at 945. While in the course of the court's disposition of the case it reviewed the constitutionality of Medicare reimbursement limits, the Secretary's act which triggered the lawsuit was the suspension of Springdale's status as a *Medicaid* provider, and "[s]tatutory authority for suspension exists under the Medicaid rather than the Medicare Act." *Id.* at 949. The court emphasized that "[c]entral to the resolution of this jurisdictional issue is our determination that Springdale's action falls under the Medicaid rather than the Medicare Act." *Id.*

We are not faced with a case like *Springdale* in which the gravamen of the action can be said to arise under the Medicaid Act and resolution requires analysis of a Medicare provision.[7] At issue here is the validi-

---

7. *See Massachusetts General Hospital v. Weiner*, 569 F.2d 1156, 1157–59 (1st Cir. 1978) (challenge to state's Medicaid plan, claiming that its reimbursement based on average daily cost of all inpatients, rather than Medicaid inpatients, did not constitute "unreasonable costs" under 42 U.S.C. § 1396a(a)(13)(D)); *Johnson's Professional Nursing Home v. Weinberger, supra*, 490

F.2d at 842, 844–45 (challenge to Secretary's cost limitation and supplementation regulations governing Medicaid payments to nursing homes; court considered whether use of Medicare limits on reasonable costs to determine "reasonable charges" under Medicaid was consistent with Medicaid standards).

ty of Title XVIII reimbursement limits which allegedly deprive a provider of reimbursement for Medicare costs, and as a result of their impact on Title XIX, of a much smaller amount of Medicaid costs as well. By declining to exercise jurisdiction over this case we leave the Hospital to the Title XVIII administrative process. To the extent that its challenge to the Medicare reimbursement limits would be successful there, or in a court after obtaining a "final determination", as required by 42 U.S.C. § 1395oo (f), the benefits of the determination will accrue to it as a provider of Medicaid as well as Medicare services.

*The judgment of the district court is affirmed.*