**GOOD SAMARITAN MEDICAL CEN-TER, et al., Plaintiffs-Appellants,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

No. 84–3923.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 26, 1985.

Decided Nov. 7, 1985.

David J. Young and Steven Tigges, argued, Murphey, Young & Smith, Columbus, Ohio, for plaintiffs-appellants.

Drake Cutini, argued, U.S. Dept. of Justice, Civ. Div., Robert S. Greenspan, Washington, D.C., Christopher Barnes, U.S. Atty., Columbus, Ohio, for defendant-appellee.

Before KEITH and KENNEDY, Circuit Judges, and WISEMAN,[*] Chief District Judge.

CORNELIA G. KENNEDY, Circuit Judge.

This case involves a challenge to the constitutionality of disparate reimbursement, under the Medicare program, of urban and rural medical care providers. Plaintiffs-appellants are eleven non-profit

---

[*] Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle District of Tennessee, sitting by designation.

hospitals that have been classified as "rural" health care providers under the new Medicare Prospective Payment System. They complain that the Department of Health and Human Services' system for determining the amount plaintiffs will be reimbursed for services provided to Medicare patients unfairly penalizes them by paying less than "urban" providers receive for the same services. They allege that, as a result, this system violates the equal protection clause of the fifth amendment to the United States Constitution. Plaintiffs appeal from the District Court's order dismissing plaintiffs' complaint for failure to state a claim for which relief can be granted. We affirm dismissal, but for a different reason: lack of subject matter jurisdiction.

Prior to 1983, payment for services performed for Medicare recipients was retrospective and based on the reasonable cost of, or the customary charge for, the services, whichever was lower. The Social Security Amendments Act of 1983, Pub.L. No. 98–21, 97 Stat. 165, amended the Medicare system to provide for a prospective payment system. The object of the amendment is to predetermine fixed rates of reimbursement for any service that might be performed on a Medicare recipient. The rates are determined by multiplying an average-cost-per-patient figure by a Diagnosis Related Group (DRG) weight. A Diagnosis Related Group is a type of medical case or procedure (*e.g.* a cardiac arrest case or a foot procedure). Each group is assigned its own weight depending on how complicated the cases or procedures in that group are.[1] The other half of the formula (average cost per patient) will ultimately consist of two possible figures: a national average cost per patient for urban providers and a corresponding national average for rural providers.[2]

Plaintiffs' claim is that the separate average cost figures for rural and urban providers, as those figures are being computed by the Department, violate the equal protection clause. More specifically, plaintiffs object to what they allege is a double-counting of labor costs.[3] This aspect of the computation allegedly skews reimbursement rates in favor of the urban providers.

Plaintiffs' constitutionality claim is first premised on the argument that when the Department computes an average cost for rural providers and an average for urban providers, it counts the urban-rural wage differential twice, which has the effect of boosting urban provider reimbursement (because urban wages are relatively higher than rural wages) and lowering rural provider reimbursement. Thus, according to plaintiffs, rural providers are treated unequally in an arbitrary, capricious, and irrational manner that promotes no legitimate purpose.

The purpose of setting uniform reimbursement rates in advance is that it will encourage providers to be more efficient. Inefficient providers will not be able to pass their costs on to the government in the form of higher reimbursement requests. The achievement of this goal depends on eliminating the ability of individual providers to affect the rate at which they will be reimbursed. This is achieved through a system of average costs. As noted above, the ultimate goal is one average-cost-per-patient figure for urban providers and one for rural providers.[4] In the

1. The greater the complications, the higher the DRG weight will be. Consequently, the more complicated cases will generate greater levels of reimbursement.

2. Presently, there are no uniform averages because during the transition period the average-cost-per-patient figure will be a conglomeration of the average historical costs of the particular provider and the average historical costs of other providers in the relevant geographic region. The DRG weights remain the same regardless of who the provider is.

3. Plaintiffs also object to the use of separate rural and urban average non-labor cost figures. Plaintiffs allege that these averages are too rough in that they penalize those rural hospitals whose non-labor costs are high relative to the rural average for non-labor costs.

4. Plaintiffs conceded, both in their briefs and at oral argument, that they are not challenging Congress' decision to implement a prospective payment system, nor are they challenging its decision to reimburse providers differently

meantime, the average cost component will be made up of the historical average cost figures of a particular provider and the historical average costs of other providers in its region.

To arrive at these averages, the Act first requires the Secretary of the Department to develop base period cost data for each hospital. The Secretary collected data from the hospitals, and for each one it divided the total allowable costs by the number of patients treated to arrive at an average cost per patient per hospital. These averages per hospital then had to be standardized for conversion to regional averages. The Act requires that each average per hospital be adjusted to eliminate the following biases: (1) those caused by an unusual mix of cases at a particular hospital (*e.g.* a hospital with an inordinate number of complicated cases), (2) those caused by indirect medical education costs, and (3) those caused by biases in the wage levels in the hospital's area. 42 U.S.C. § 1395ww(d)(2)(C)(i)–(iii). The Secretary is then directed to compute, using these standardized per hospital averages, a pair of averages (a rural average and an urban average) for each of the nine census divisions of the United States as well as two averages (rural and urban) for the nation as a whole. 42 U.S.C. § 1395ww(d)(2)(D). An urban area is defined as an area within a Metropolitan Statistical Area (MSA) or within a similar area recognized by the Secretary. All other areas are rural.

It is the next step in the computation process that prompts plaintiffs to complain that the Department is "double counting" labor costs. The Act directs that, for each of the regional and national averages, the Secretary shall adjust the proportion of the costs attributable to wages and wage-related costs so that they reflect the relative hospital wage levels in a particular hospital's geographic area (as compared to the national average hospital wage level). 42 U.S.C. § 1395ww(d)(2)(H).

based on whether they are in rural or urban areas.

Plaintiffs' original claim that *the Act and the regulations* unconstitutionally double count has, in light of the Secretary's explanation of what she is doing, evolved into a claim that the Secretary's *failure to follow her own regulations* (as explained) leads to unconstitutional double counting. The Secretary notes that section 1395ww(d)(2)(C)(ii) of the Act directs her to standardize the per hospital averages so that they do not reflect area-by-area variations in wage levels. She claims that she does this and that, consequently, the "average labor costs" figures that are multiplied by regional "wage indices" do not already reflect any differential between urban and rural wage levels. The Secretary insists that, as a result, the wage differential is only counted once. In their reply brief, plaintiffs acknowledge that they have no complaint with the computation method that the Secretary claims to be utilizing. Rather, they complain that the Secretary is not computing reimbursement rates in the manner prescribed by the statute and by her own regulations—in other words, they complain that the Secretary is not doing what she claims she is doing. Plaintiffs therefore insist that facts are in dispute, rendering dismissal on the pleadings improper.

■ We decline to reach the question whether the Secretary's alleged deviations from her own formula for computing reimbursement rates violates the Constitution, because the district court lacks jurisdiction to adjudicate that claim, as it has been presented in this case.

Plaintiffs allege jurisdiction under 28 U.S.C. § 1331. Defendant counters with 42 U.S.C. § 405(h), the preclusion provision of the Social Security Act,[5] which provides that no action may be brought against the Secretary under 28 U.S.C. § 1331 "to recover on any claim arising under this subchapter." Thus, the pivotal issue in this

5. Section 1872 of the Medicare Act, 42 U.S.C. § 1395ii, incorporates 42 U.S.C. § 405(h) into the Medicare Act.

case is whether plaintiffs' claim arises under the Medicare Act.

The Supreme Court has recently reaffirmed that the "arising under" language of § 405(h) must be read broadly. *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). In *Ringer,* claimants were Medicare recipients who either had undergone a medical procedure known as bilateral carotid body resection (BCBR) or desired to undergo the procedure. Claimants were challenging the Secretary's formal administrative ruling prohibiting Administrative Law Judges and the Appeals Council from ordering Medicare payments for BCBR operations. Although some of the claimants had filed claims for reimbursement with fiscal intermediaries, none had exhausted his administrative remedies. Instead, the claimants filed a complaint in the federal District Court for the Southern District of Ohio alleging that the Secretary's formal ruling violated the Medicare Act, the Administrative Procedure Act, and the due process clause of the fifth amendment.

The Supreme Court held that the plaintiffs' complaint was, "at bottom, a claim that they should be paid for their BCBR surgery." 104 S.Ct. at 2021. Although respondents arguably objected to the Secretary's procedure for reaching her decision, and to the manner in which she promulgated the rule, "those claims are 'inextricably intertwined' with respondents' claims for benefits." 104 S.Ct. at 2021.

Just as the *Ringer* plaintiffs' claims were, at bottom, claims about how much the Medicare program should reimburse plaintiffs' providers for services performed, plaintiffs' claims in this case are, at bottom, claims about how much the Medicare program should pay them for services performed.[6] It is irrelevant to the jurisdictional issue whether plaintiffs are challenging the method by which reimbursement is determined.

> [T]o be true to the language of the statute, the inquiry in determining whether § 405(h) bars federal question jurisdiction must be whether the claim "arises under" the Act, not whether it lends itself to a "substantive" rather than a "procedural" label. See *Mathews v. Eldridge,* 424 U.S. [319], 327 [96 S.Ct. 893, 899, 47 L.Ed.2d 18] [ (1976) ] (recognizing that federal question jurisdiction is barred by 42 U.S.C. § 405(h) even in a case where claimant is challenging the administrative *procedures* used to terminate welfare benefits).

*Ringer,* 104 S.Ct. at 2022 (emphasis in original). Nor is our analysis affected by the fact that plaintiffs' claims also arise under the Constitution. *Id.* at 2022.

Plaintiffs do not really deny that the broad interpretation of § 405(h) in *Ringer,* by itself, compels a conclusion that their claim arises under the Medicare Act. Rather, they contend that there is an implied exception to § 405(h) that allows courts to exercise jurisdiction under § 1331 when there is no other avenue for judicial review. See *Salfi,* 422 U.S. at 762, 95 S.Ct. at 2465 (noting that a construction of § 405(h) that foreclosed all avenues of judicial review of constitutional claims would raise a "serious constitutional question" as to the validity of the statute); *see also Michigan Academy of Family Physicians v. Blue Cross and Blue Shield of Michigan,* 757 F.2d 91, 94 (6th Cir.1985) (holding that the district court had § 1331 jurisdic-

---

**6.** There is no basis for distinguishing *Ringer* solely on the ground that the plaintiffs there were Medicare recipients, whereas the plaintiffs in this case are Medicare providers. In each case, "both the standing and the substantive basis for the presentation" of the groups' claims is the Medicare Act. *Ringer,* 104 S.Ct. at 2022 (quoting *Weinberger v. Salfi,* 422 U.S. 749, 760–61, 95 S.Ct. 2457, 2464, 45 L.Ed.2d 522 (1975)). Thus, § 405(h) also proscribes § 1331 jurisdiction over provider claims that arise under the Act.

> [T]he Hospital argues that the first sentence of § 405(h) ... indicates that the reach of § 405(h) is limited to actions by individuals and not institutions. We reject this limiting construction, taking note of the long line of cases that have applied § 405(h) to actions brought by providers—institutions—under the Medicare Act.

*Rhode Island Hospital v. Califano,* 585 F.2d 1153, 1158 n. 4 (1st Cir.1978) (citations omitted).

tion over a Medicare, Part B reimbursement regulation dispute, because the Act does not authorize judicial review of Part B claims), *cert. granted*, —— U.S. ——, 106 S.Ct. 58, 88 L.Ed.2d 47 (1985). We hold that such an implied exception is not applicable in this case, because plaintiffs have an avenue for judicial review of Medicare Part A claims: presentation of their claims to the Prospective Reimbursement Review Board. 42 U.S.C. § 1395oo.

Section 1395oo explicitly provides for review by the PRRB if the provider is dissatisfied with a determination of the amount of reimbursement due. 42 U.S.C. § 1395oo(a)(1)(A)(i)–(ii). Plaintiffs are complaining about reimbursement rates. Whether the remedy for their complaint is more reimbursement for rural providers, less reimbursement for urban providers, or some combination of the two, their complaint is about the *amount* of reimbursement. Thus, this case is distinguishable from *National Association of Home Health Agencies, Inc. v. Schweiker*, 690 F.2d 932 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983), where the Court concluded that the PRRB could not hear a dispute involving the Secretary's power to designate reimbursement intermediaries.[7]

Furthermore, § 1395oo(f)(1) establishes a procedure for seeking judicial review even when the PRRB lacks the authority to decide the question. The section reads:

> Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board, or of any reversal, affirmance, or modification by the Secretary is received. Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law

or regulations relevant to the matter in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is rendered.

Thus, even accepting plaintiffs' characterization of the nature of their claim (*i.e.*, that it is not a complaint about the amount of reimbursement), the Act requires plaintiffs to present their claims to the Board initially, so that the Board can determine in the first instance whether it has authority to decide the question. Plaintiffs have not complied with this requirement.

Other circuits that have considered claims factually indistinguishable from plaintiffs' have also concluded that § 1331 jurisdiction is precluded. Those courts held that the Prospective Reimbursement Review Board provided an adequate mechanism for ultimately obtaining judicial review of the underlying claims that plaintiffs had tried to present directly to the district courts. In *Association of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C.Cir.1977), hospitals challenged a Department regulation that determined reimbursement rates based on the number of beds at a facility and that did not account for variations in either patient mix or the scope of services provided. The court of appeals held that the Medicare Act requires such claims to be presented initially to the PRRB for the rendering of a final decision. The court noted that if the claims were turned down, judicial review would then have been available.

The First Circuit has reached the same conclusion. In *Rhode Island Hospital v. Califano*, 585 F.2d 1153 (1st Cir.1978), plaintiff challenged the constitutionality of a Department reimbursement regulation

---

7. Even the type of claim made in *Home Health Agencies* may be outside § 1331 jurisdiction, in light of the broad reading of § 405(h) in *Ringer*. See *American Federation of Home Health Agencies v. Heckler*, 754 F.2d 896 (11th Cir.1984)

(holding that *Ringer* mandates preclusion of jurisdiction over a challenge to a Department regulation that transfers reimbursement functions from HHS to private intermediaries.).

that favored hospitals in areas with high per capita income. The court of appeals found that § 405(h) prevented the district court from asserting § 1331 jurisdiction. Plaintiff's claims could be presented to the PRRB.

> The Medicare Act, in 42 U.S.C. § 1395oo, itself provides for the establishment of a Prospective Reimbursement Review Board to hear reimbursement disputes. And in § 1395oo(f), we find the functional equivalent of § 405(g) in this context, expressly authorizing judicial review of final decisions of the Board and of any reversal, affirmance or modification of any Board decision by the Secretary.

*Rhode Island Hospital*, 585 F.2d at 1158. The Court also noted that the PRRB process must be followed even where plaintiff is alleging a constitutional violation that the Board itself would not be able to remedy.

> The [Prospective Reimbursement Review] Board is now available, however, and § 1395oo(f) expressly authorizes judicial review of provider reimbursement disputes, at which time a constitutional challenge can be heard by the courts. Rhode Island Hospital's situation is critically distinguishable from that in *St. Louis Hospital* [sic] and thus falls squarely within *Salfi* in which judicial review was also made available by the Act, in § 405(g).[8]

585 F.2d at 1159.

In the instant case, plaintiffs are making the same sort of challenge as those made in *Association of American Medical Colleges* and *Rhode Island Hospital*. They are complaining that they should receive a different amount of money for providing care to Medicare patients. It is irrelevant that the Board may not be able to provide the relief that they seek. The plaintiffs in *Salfi* were challenging the constitutionality of the Medicare Act itself, yet the Court required plaintiffs to first avail themselves of the review process established by the Act. This requirement has a function.

> [I]f the claims were turned down [by the PRRB], judicial review of the Board's final decision would have been available. The Secretary would thereby have been assured the opportunity to determine whether the claims were invalid for other reasons or cognizable under different theories, and a reviewing court would have been assisted in its scrutiny of the challenged regulation by its application to the particular facts.

*Association of American Medical Colleges*, 569 F.2d at 110.

Prior exhaustion of the administrative procedure is particularly valuable here where the challenge is to a procedure alleged to be used. It will result in a record of the procedure actually used.

Thus, because plaintiffs' claim arises under the Medicare Act, and because the Act provides them an avenue for obtaining judicial review of their underlying claims, this case is distinguishable from *Michigan Academy, supra,* where plaintiffs' claim under Part B of the Medicare Act could only reach the federal courts under the general federal question jurisdiction grant of § 1331.

Plaintiffs' complaint is therefore dismissed for lack of subject matter jurisdiction.

---

**8.** *St. Louis University v. Blue Cross Hospital Service,* 537 F.2d 283 (8th Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976) involved a case where the PRRB was not in existence during the relevant accounting periods.