666 F.2d 34
 HOPEWELL NURSING HOME, INC. a South Carolina corporation,
and William P. Betchman, an individual, on behalf
of themselves and all other entities and
persons similarly situated, Appellees,
v.
Richard L. SCHWEIKER, Secretary of Health and Human
Services, United States Department of Health; James B.
Cardwell, Commissioner of Social Security, United States
Department of Health; Frank J. Groschelle, Regional
Director, United States Department of Health; and James W.
Murray, Regional Commissioner, Social Security
Administration, United States Department of Health,
Education and Welfare, Region IV, Appellants.
 No. 80-1846.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 2, 1981.
Decided Nov. 30, 1981.
 
 Leslie L. Clune, Dept. of Health and Human Services, Washington, D. C. (Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Thomas P. Simpson, U. S. Atty., Columbia, S. C., Juan A. Del Real, Acting Gen. Counsel, Samuel D. Turner, Dept. of Health and Human Services, Washington, D. C., on brief), for appellants.
 Eugene Tillman, Washington, D. C. (Thomas C. Fox, Joel M. Hamme, Pierson, Ball & Dowd, Washington, D. C., Harry S. Dent, Harry S. Dent & Associates, Columbia, S. C., on brief), for appellees.
 Before WIDENER, HALL and ERVIN, Circuit Judges.
 ERVIN, Circuit Judge:
 
 
 1
 In this appeal, the Secretary of the Department of Health and Human Services (the Secretary) seeks review of the district court's assertion of subject matter jurisdiction under 28 U.S.C. § 1331 over an action brought by Hopewell Nursing Home challenging survey methods used in determining ranges of compensation under the provider reimbursement program of the Medicare Act, 42 U.S.C. § 1395 et seq.[1] The Secretary's jurisdictional challenge has two bases: first, that the language of section 205(h) of Title II of the Social Security Act, 42 U.S.C. § 405(h), precludes federal question jurisdiction over claims arising under the Medicare Act; and, second, that the only mechanism for the administrative and judicial treatment of provider reimbursement claims is found within the Medicare Act itself at 42 U.S.C. § 1395oo, and Hopewell's failure to exhaust the procedures available under that section presently bars its resort to the courts.[2] Finally, the Secretary appeals the district court's determination on the merits that the challenged ranges are invalid.
 
 
 2
 Because we agree that, by virtue of section 205(h) of the Social Security Act, no subject matter jurisdiction attaches to suits arising under the Medicare Act and that Hopewell was required to resort to the administrative review process of that Act before bringing its cause before the courts, we find it unnecessary to reach the merits of this controversy. We therefore reverse and remand the suit to the district court.
 
 I.
 
 3
 Under the Medicare program, providers of covered services are to be compensated for the lower of the provider's customary rate for the services rendered or the "reasonable cost" of those services 42 U.S.C. § 1395(h). The provider is reimbursed either directly by the Social Security Administration or by a fiscal intermediary, generally a private insurance company, and agrees not to bill eligible patients for covered services.[3] The fiscal intermediary acts as the statutory agent of the Secretary in reviewing claims for reimbursement and in administering payment to providers. 42 U.S.C. § 1395(h).
 
 
 4
 Prior to June 30, 1973, the Social Security Act did not provide any specific mechanism for review of Medicare provider reimbursement claims. By regulation, however, the Secretary established a provider appeal mechanism administered through the fiscal intermediaries. The subject matter jurisdiction of the intermediary hearing officer was limited from the outset:
 
 
 5
 A. Nonreviewable Issues-The following issues are beyond the scope of review of an intermediary hearing, and therefore, the hearing officer may not take jurisdiction in any such matter:
 
 
 6
 ....
 
 
 7
 6. the reasonableness of the ranges of owners' compensation established by the (Bureau of Health Insurance);[4]
 
 
 8
 ....
 
 
 9
 11. a dispute as to the constitutionality of the law, regulations or SSA instructions or rulings.
 
 
 10
 Medicare Intermediary Manual, HIM-13 (Part 2), § 2614.7, reprinted in (1980) 2 Medicare & Medicaid Guide P 13,510 at 5463-64.
 
 
 11
 Congress then amended the Medicare Act specifically to allow for both administrative and judicial review of provider claims. Pub.L.No.92-603, 86 Stat. 1420 (1972). The Provider Reimbursement Review Board (the Board) was created by 42 U.S.C. § 1395oo and it became the forum for review of claims for cost reporting years after June 30, 1973, if the amount in controversy was $10,000 or more. The section provides in relevant part:
 
 
 12
 A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.
 
 
 13
 42 U.S.C. § 1395oo(f)(1).
 
 
 14
 The Board was given broader subject matter jurisdiction than were the intermediary hearing officers, but its jurisdiction is nonetheless restricted:
 
 
 15
 Although the Board's authority to review reimbursement disputes is extensive, it will not attach jurisdiction to nor render a decision on any matter dealing with:
 
 
 16
 ....
 
 
 17
 10. A dispute as to the constitutionality of the law, regulations, or SSA instructions or rulings(.)
 
 
 18
 Medicare Intermediary Manual, HIM-13 (Part 2), § 2624.5, reprinted in (1980) 2 Medicare & Medicaid Guide P 7514.25.
 
 
 19
 Under the current scheme, then, for cost reporting years on or after June 30, 1973, if a provider disagrees with the fiscal intermediary's determination of the appropriate reimbursement amount, and the amount in controversy is $10,000 or more, it may request an administrative hearing before the Board. For cost reporting years prior to June 30, 1973, if the amount is $1,000 or more, and for cost years ending on or after June 30, 1973, if the amount is $1,000 or more, but less than $10,000, the intermediary hearing is available. No provision is made for administrative review of claims for less than $1,000.
 
 
 20
 The procedures employed by fiscal intermediaries in Region IV of the Department of Health and Human Services[5] to establish owner-administrator compensation ranges[6] became the object of this class action, filed in September 1975 by Hopewell Nursing Home, a South Carolina skilled nursing facility, and William P. Betchman, half owner and full time administrator of Hopewell (collectively, Hopewell or the providers). Hopewell alleged that the ranges for certain years were invalid because they had not been promulgated in accordance with the Secretary's instructions; that the manner of establishment, as well as the use of the ranges, was arbitrary and capricious; that the Secretary's promulgation of the procedures used to develop the ranges and the adoption of the ranges themselves were substantive rulemaking and hence invalid because the Administrative Procedure Act, 5 U.S.C. § 551 et seq., had not been complied with; that the ranges denied owner-administrators due process and equal protection of the laws; and that the defendants' destruction of the background data for the 1971 ranges violated the Federal Records Act of 1950, 44 U.S.C. §§ 3101 et seq. The complaint sought declaratory and injunctive relief and damages.[7] Hopewell had sought no administrative review of these claims or of specific reimbursement claims prior to instituting this action in district court. After denying the Secretary's motion to dismiss for lack of subject matter jurisdiction, the district court granted the providers' motion for summary judgment, holding that the 1971 and 1974 ranges were invalid and that all reimbursements made in accordance with those ranges had to be recomputed. Following the court's denial of his motion for reconsideration, the Secretary filed notice of appeal with this court.
 
 II.
 
 21
 We first turn to the Secretary's argument that federal question jurisdiction under 28 U.S.C. § 1331(a) is barred by section 205(h), which reads:
 
 
 22
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter. (emphasis added).
 
 
 23
 Because section 205(h) has been incorporated by reference in the Medicare Act "to the same extent as (it is) applicable with respect to" Title II of the Social Security Act, 42 U.S.C. § 1395ii, it is necessary at the outset to observe its effect on jurisdiction in the Title II setting. The Supreme Court has addressed the issue, interpreting section 205(h) to preclude section 1331 federal question jurisdiction over claims arising under Title II, the retirement, survivors, and disability insurance provisions of the Social Security Act. See Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The specific challenge in Salfi was to the constitutionality of duration of relationship eligibility requirements which exclude from eligibility for Social Security insurance benefits surviving wives and stepchildren whose relationships to the deceased wage earner have endured for less than nine months prior to death. The Court held that the third sentence of section 205(h) is more than mere codification of the exhaustion of remedies doctrine: that conclusion is "plain from its own language, which is sweeping and direct and which states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted." Id. at 757, 95 S.Ct. at 2463. In addition, the Court noted, the sentence would be superfluous if it were construed as nothing more than an exhaustion requirement because the first two sentences of the section made it clear that exhaustion would be required: "(s)pecifically they prevent review of decisions of the Secretary save as provided in the Act, which provision is made in 42 U.S.C. § 405(g) (which) section prescribes typical requirements" for administrative review and exhaustion. Id. at 757-58, 95 S.Ct. at 2462-2463 (footnote omitted).[8]
 
 
 24
 Our reading of Salfi convinces us that similar limitations have been placed on federal question jurisdiction of Medicare provider reimbursement disputes: just as section 205(h) operates to restrict judicial review of Title II claims to that provided in the title itself, i.e., section 205(g), so section 205(h) limits judicial review of provider reimbursement disputes by means of the procedures available under the Medicare Act, that is, section 1395oo, which alone specifies the administrative procedures culminating in judicial review of reimbursement disputes. We believe that Salfi requires us to intercept the providers in their efforts here to create a basis for federal jurisdiction apart from this specific provision in the Medicare statute. Federal jurisdiction over provider reimbursement disputes is limited to that specifically supplied by the Medicare Act itself, i.e., 42 U.S.C. § 1395oo, and, absent resort to the Act's procedures, the providers cannot seek to have their claims resolved by the district court. In reaching this conclusion, we find ample and persuasive support in the law of other circuits and note as particularly convincing the District of Columbia Circuit's analysis in Association of American Medical Colleges v. Califano, 569 F.2d 101 (1977). See Kechijian v. Califano, 621 F.2d 1 (1st Cir. 1980); Rhode Island Hospital v. Califano, 585 F.2d 1153 (1st Cir. 1978); see also Humana of South Carolina, Inc. v. Califano, 590 F.2d 1070 (D.C.Cir.1978).
 
 III.
 
 25
 It is the providers' position, however, that section 1395oo review by way of section 205(h) was unavailable to them and hence could not have operated to allow judicial review. They argue that they should not, therefore, have been required to pursue a fruitless process. In support of this position, they offer three arguments: (1) that section 205(h) applies only to claims for specific relief and not to their administrative attack on the ranges themselves, an attack they attempt to characterize as "collateral" because of its allegedly constitutional nature; (2) that they could not have proceeded under section 1395oo because they did not meet the threshold amount in controversy requirement; and (3) that, in any event, section 1395oo review is not available for their claims arising prior to 1973. For reasons that follow, we remain unpersuaded that the providers are entitled to judicial review prior to seeking relief at the agency level.A.
 
 
 26
 Hopewell's first argument fails for two reasons. First, although it has attempted to cloak its claims in constitutional and statutory garb, Hopewell actually seeks-and in fact has received from the district court-what amounts to an opportunity to increase its reimbursement: that the district court's grant of relief was a call for the recomputation of reimbursement rather than an outright award cannot negate the conclusion that Hopewell's objective is to recover more than the intermediary granted it on its reimbursement claims which undoubtedly arise under the Social Security Act and, hence fall within the scope of section 205(h). Furthermore, even if we were to concede that Hopewell's challenges are truly constitutional and statutory in character, and therefore incapable of resolution at the administrative level, we could not in good conscience overlook the dictate of Salfi, in which the Court refused to allow the assertion of an underlying constitutional claim to overcome the section 205(h) bar to section 1331 jurisdiction. The Salfi Court recognized that
 
 
 27
 (i)t would, of course, be fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint. But it is just as fruitless to argue that the action does not also arise under the Social Security Act. For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions.
 
 
 28
 422 U.S. at 760-61, 95 S.Ct. at 2464-2465.
 
 The reach of section 205(h)
 
 29
 is not limited to decisions of the Secretary on issues of law or fact. Rather, it extends to any "action" seeking "to recover on any (Social Security) claim"-irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory restrictions.
 
 
 30
 Id. at 762, 95 S.Ct. at 2465.
 
 
 31
 The Court concluded that federal court jurisdiction over constitutional challenges was available, but that it was limited to that authorized by Title II of the Social Security Act, which under section 205(g) has mandated a final decision of the Secretary as a jurisdictional prerequisite:
 
 
 32
 the plain words of the third sentence of section (2)05(h) do not preclude constitutional challenges. They simply require that they be brought under jurisdiction grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act.
 
 
 33
 Id.
 
 
 34
 This result was found to be not only of "unquestionable constitutionality," but also "manifestly reasonable" because "it assures the Secretary the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act." Id.
 
 
 35
 Cases decided subsequent to Salfi have recognized its impact on an argument of this sort. In Association of American Medical Colleges v. Califano, 569 F.2d 101 (D.C.Cir.1977), for example, the court rejected the plaintiff's argument that the availability of federal question jurisdiction depends upon whether the issues in dispute can be better dealt with-or, impliedly, dealt with at all-at an administrative hearing. Having assumed arguendo that the plaintiffs would be unable to obtain relief from the allegedly defective regulation through the administrative process because the Provider Reimbursement Review Board would be unable to repudiate the governing regulation, the court nonetheless concluded that Salfi required it to decline jurisdiction. It reached that result because the Salfi plaintiffs had been in virtually the same position as those in Association of American Medical Colleges: the Secretary could not have ruled that the statute in issue there, which he was bound to enforce, was unconstitutional, but the Supreme Court had nevertheless required the plaintiffs to resort to the administrative process. Id. at 108. See Rhode Island Hospital v. Califano, 585 F.2d 1153, 1160-61 (1st Cir. 1978), quoting Milo Community Hospital v. Weinberger, 525 F.2d 144, 147 (1st Cir. 1975) ("Salfi's restrictions on judicial review to that provided in the Act '(are) not made inapplicable by reason of a constitutional challenge, beyond the power of the Secretary to make remedial action.' ").[9]
 
 
 36
 The Salfi Court's determination that all claims, whether or not they could be resolved as framed, had to be routed through the administrative process prior to judicial review was based upon its recognition that some constitutional claims could have been resolved on other than constitutional grounds so that resort to the courts might never be necessary. That policy is equally applicable in this case, as the providers have never challenged the intermediary's determinations of what constitutes reasonable reimbursement, even though the Board is able to make exceptions in order to allow a provider to receive an amount in excess of the upper limit of the applicable range, if proof justifies as a reasonable cost the excess amount claimed, and even though the Secretary may well take action satisfactory to the plaintiffs, thereby obviating the need for judicial intervention at all. In any event, allowing the Secretary to address the factual dimensions of the issues raised can only sharpen the focus on those issues and narrow the scope of judicial action required. We therefore refuse to allow Hopewell to rescue its case from the strictures of Salfi and section 205(g) merely by grouping its claims under the rubric of constitutional or statutory challenge.[10]
 
 B.
 
 37
 Hopewell's next assertion, that its suit does not meet the amount in controversy requirement, is in itself an illustration of how useful to the court an administrative hearing might prove, if one were sought. The determination whether the amount of the providers' post-1973 claims was sufficient to obtain a Board hearing is impossible to make at this level. The issue was never presented to the district court and, although Hopewell has made certain allegations extraneous to the record on appeal concerning the amount in controversy,[11] the record is virtually devoid of evidence with respect to the jurisdictional amount. In any event, a contest of this sort is more easily resolved by the agency charged with administering the statute. If the Board determines that the amount in controversy requirement has not been met, the "final decision" required by section 1395oo will be that it has no jurisdiction, and Hopewell may thereafter seek judicial review.
 
 C.
 
 38
 Hopewell further contends that, because no administrative review of the providers' claims was available until 1973, there were no means of obtaining a final decision from the Secretary, reviewable in district court, of those earlier claims. Although it is true that the Board is an available forum only with respect to claims arising for cost years ending on or about June 30, 1973, Hopewell's inclusion in its complaint of pre-1973 claims cannot justify its disregard of the jurisdictional requirements of section 1395oo.
 
 
 39
 We reach this conclusion not without some hesitation, recognizing that the statute simply does not provide the Board with the authority to decide pre-1973 claims and hence that there are no administrative procedures culminating in judicial review of those claims. We would certainly be loath to construe section 205(h) to preclude all judicial review of pre-1973 claims, aware that such a construction would be of disputable constitutionality. See, e.g., Weinberger v. Salfi, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975); Johnson v. Robison, 415 U.S. 361, 366-67, 94 S.Ct. 1160, 1165-1166, 39 L.Ed.2d 389 (1974); Chelsea Community Hospital, SNF v. Michigan Blue Cross Association, 630 F.2d 1131 (6th Cir. 1980); Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc., 570 F.2d 660, 665 (7th Cir. 1977); Association of American Medical Colleges v. Califano, 569 F.2d 101, 107 n.55 (D.C.Cir.1977). Instead, our decision that jurisdiction over the pre-1973 claims should be declined pending presentation of the entire controversy to the Secretary is one of self-imposed-rather than statutorily required-judicial deference to administrative procedure potentially dispositive of issues common to the pre- and post-1973 claims.
 
 
 40
 Our decision to impose judicially an administrative exhaustion requirement leaves us in accord with the District of Columbia Circuit, which has also required the consolidation of all claims for administrative review prior to judicial review of any one of them. See Humana of South Carolina, Inc. v. Califano, 590 F.2d 1070 (D.C.Cir.1978). Noting that "the same assertedly infirm regulation under(lay)" both sets of claims, pre- and post-1973, and that the district court had afforded the plaintiffs in that case a wholly prospective remedy, the court concluded that the district court had "sanctioned a circumvention of the congressional scheme" by allowing the plaintiff "to succeed in its broad-based legal assault ... without first resorting to the administrative process to the extent usable." Id. at 1077 (emphasis added). The court recognized that the pursuit of administrative remedies might prove fruitless on the post-1973 claims as well as the pre-1973 ones, but concluded that "Congress has made the judgment that the Secretary in the first instance must decide whether any administrative relief is forthcoming, and the question (of jurisdiction) grinds to a halt right there." Id. at 1078. "And when, as here, operation of the same regulation is responsible for pre-1973 and post-1973 complaints alike, a determination on the latter may shed light on the former." Id. The court also pointed out that the reimbursement process contemplates possible review by the Secretary, who had suggested at oral argument that he could in his discretion confer both relief for periods antedating Board jurisdiction and relief not obtainable from the Board.
 
 D.
 
 41
 In sum, we cannot allow Hopewell to avoid presentation of its claims to the Board and the Secretary. We so hold in part because we conclude that such a presentation is required by the statute and in part because we believe that, with respect to all claims, resort to the administrative process will make judicial assessment of the merits of the entire controversy much easier, as the Secretary will be given the opportunity to construe and apply his own regulations in the first instance. To the extent, therefore, that the providers disagree with the intermediary's determination of the appropriate reimbursement amounts for pre- and post-1973 cost years, they must first seek review by the Board. It is only after a "final decision" of the Board (which may well be a decision that it lacks jurisdiction) or a "reversal, affirmance or modification" of the Board's decision by the Secretary that judicial review of the providers' claims will become available. 42 U.S.C. § 1395oo(f)(1).
 
 IV.
 
 42
 The alternate bases of jurisdiction Hopewell seeks to invoke-mandamus under 28 U.S.C. § 1361, or Court of Claims jurisdiction under 28 U.S.C. § 1491 and district court and Court of Claims concurrent jurisdiction under 28 U.S.C. § 1346-equally fail to secure it a federal cause of action.
 
 A.
 
 43
 District courts are granted under 28 U.S.C. § 1361 "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." We conclude that this case is an inappropriate one for issuance of the extraordinary writ of mandamus. First, it is difficult to imagine how the Secretary could have failed to perform a duty owed the providers-i.e., granting them a "final decision" on their claims-when they have not given him the opportunity to do so by availing themselves of the administrative process. Further, it has been pointed out that "Salfi would appear to be an exercise in futility if plaintiff-claimants could circumvent the exhaustion requirements of section (2)05(h) simply by bringing suit under section 1361." Morris v. Weinberger, 401 F.Supp. 1071, 1084 (D.Md.1975) (supplemental opinion). With this statement we agree, and we accordingly refuse to allow jurisdiction to be founded on the mandamus statute, at least absent a showing, not made here, that the Secretary simply will not act on claims presented to him. See Association of American Medical Colleges v. Califano, 569 F.2d at 113.
 
 B.
 
 44
 Although we are aware that some circuits have held that jurisdiction over provider reimbursement disputes lies with the Court of Claims,[12] see, e.g., Dr. John T. MacDonald Foundation, Inc. v. Califano, 571 F.2d 328 (5th Cir.), cert. denied, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc., 570 F.2d 660 (7th Cir. 1977); South Windsor Convalescent Home, Inc. v. Mathews, 541 F.2d 910 (2d Cir. 1976), we decline to do so. To the extent that section 205(h) acts to circumscribe judicial review of provider reimbursement disputes, it does so in all federal courts: the section's very language limits review "by any person, tribunal or governmental agency except as herein provided" (emphasis added) and, section 1395oo being the sole provision for judicial review, there are no means by which this dispute could legitimately be transferred to the Court of Claims. See Chelsea Community Hospital, SNF v. Michigan Blue Cross Association, 630 F.2d 1131, 1135 (6th Cir. 1980); Dr. John T. MacDonald Foundation v. Califano, 571 F.2d at 333 (dissenting opinion) ("The majority's own analysis (that section 205(h) precludes district court review) proves that the Court of Claims has no jurisdiction to review the appellant's claim.").
 
 V.
 
 45
 Hopewell's assertion has never been that it has attempted to get relief from the agency at all but only that it should not be required to do so. Because we reject that contention and hold that jurisdiction is either founded on the procedures culminating in section 1395oo judicial review or is not at all available, we agree with the Secretary's position that Hopewell's failure to exhaust its administrative remedies (incomplete though they may ultimately prove to be) bars its suit at this time. A "final decision" of the Board or Secretary is jurisdictional and not dispensable merely because the district court concludes that administrative review would be futile. See Weinberger v. Salfi, 422 U.S. at 766, 95 S.Ct. at 2467; Association of American Medical Colleges v. Califano, 569 F.2d at 109.
 
 
 46
 We therefore reverse, and on remand the district court shall dismiss the post-1973 claims for lack of jurisdiction. With respect to the pre-1973 claims, however, we conclude that a dismissal of that aspect of the suit would be improper at this time. The district court should defer any determination of its jurisdiction with respect to those claims standing alone. If and when Hopewell meets the jurisdictional prerequisites for its post-1973 claims, the district court can, if necessary, then examine its authority to make an appropriate decision regarding the claims for the pre-1973 years. See Humana of South Carolina, Inc. v. Califano, 590 F.2d 1070, 1085 (D.C.Cir.1978).
 
 
 47
 REVERSED AND REMANDED.
 
 K. K. HALL, Circuit Judge, concurring:
 
 48
 I agree with the majority that the district court should have dismissed the suit for lack of jurisdiction. I note with satisfaction, however, that Congress has recognized the futility of a lengthy administrative hearing in cases like this one and has streamlined the procedure. In the Omnibus Reconciliation Act, Congress amended 42 U.S.C. § 1395oo(f)(1) to outline a mechanism whereby the provider may proceed directly to federal court if, after 30 days of a request for a jurisdictional ruling, the PRRB does not determine that it has jurisdiction over a case. P.L. 96-499 § 955 (1980); see also, (1981) U.S.Code Cong. & Ad.News ----. Since this amendment was effective December 5, 1980, Hopewell should be able to utilize this abbreviated device to obtain judicial review of its claim.
 
 
 
 [1]
 The Medicare Act was enacted as Title XVIII of the Social Security Act of 1965, Pub.L.No.89-97, 79 Stat. 291
 
 
 [2]
 The district court relied on the Administrative Procedure Act (the APA), 5 U.S.C. § 551 et seq., as an alternate basis of jurisdiction. Shortly thereafter, however, the Supreme Court held that the APA provided no "implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977)
 
 
 [3]
 Reimbursement is based on an interim rate that is expected to approximate costs incurred by the provider for services rendered over an annual period. Payment received under the interim rate is subject to adjustment based on the actual cost submitted in a costs report, which is due within ninety days after the end of the fiscal year. See 42 C.F.R. § 405.406(b)
 
 
 [4]
 The Bureau of Health Insurance of the Social Security Administration was responsible for the overall administration of the Medicare program until a March 1977 departmental reorganization, when that responsibility was transferred to the Health Care Financing Administration
 
 
 [5]
 Region IV of the Department of Health and Human Services is comprised of Alabama, Florida, Georgia, Kentucky, Mississippi, North Carolina, South Carolina, and Tennessee
 
 
 [6]
 Pursuant to the authority granted him to establish the "method or methods" for ascertaining which provider costs will be considered reasonable, and therefore reimbursable, see 42 U.S.C. § 1395x(v)(1)(A), the Secretary in 1966 promulgated 42 C.F.R. § 405.426, which recognized as reimbursable a reasonable allowance for compensation to owners of Medicare provider organizations for managerial, administrative, professional, and other services performed by the owner in the operation of the facility. Reasonable compensation was defined as "an amount (that) would ordinarily be paid for comparable services by comparable institutions," 42 C.F.R. § 405.426(b)(2)(i), and as "(d)epend(ent) upon the facts and circumstances of each case." 42 C.F.R. § 405.426(b)(2)(ii). In order to ascertain the amount that "would ordinarily be paid for comparable services by comparable institutions," the Secretary, acting through the Bureau of Health Insurance of the Social Security Administration, instructed his fiscal intermediaries to conduct certain surveys and to prepare ranges of compensation paid by comparable institutions in established geographical areas. These instructions were issued in "Intermediary Letters," which are binding documents used to inform intermediaries of the Bureau's interpretations of the Medicare statute and regulations. The interpretations and instructions contained in these letters were subsequently compiled and issued in the form of two Health Insurance Manuals, denominated HIM-13 and HIM-15. According to the instructions, the appropriate comparison for establishing compensation ranges for owner-administrators of extended care facilities was to be the compensation of nonowner-administrators of extended care facilities in the same area. Results of these surveys were to be used as the basis for establishing guidelines for each region of the Department of Health and Human Services
 
 
 [7]
 Although the complaint contained allegations respecting the ranges calculated for 1968, it sought relief only with respect to the 1971 and 1974 ranges
 
 
 [8]
 Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), not applicable to provider cost reimbursement disputes arising under the Medicare Act, provides for judicial review of "any final decision of the Secretary" if review is sought within sixty days after the mailing of the decision to the party seeking review
 
 
 [9]
 The district court in the case under review, however, sought to distinguish Salfi on the ground that Salfi involved a statutory administrative review scheme, 42 U.S.C. § 405(g), under which all objections, statutory or constitutional, could be heard. The court concluded that, because the providers here had no equivalent of section 205(g) administrative review in that the Secretary by his own actions had deprived the agency of its right to hear statutory and constitutional objections, Salfi could not be read to preclude judicial review of claims that could not be heard by the agency. This interpretation of Salfi, however, is directly contrary to the Court's reasoning in that case: the Court made it clear that the jurisdictional limitation of section 205(h) applied to all of the plaintiffs' challenges, constitutional, statutory, or regulatory. See Weinberger v. Salfi, 422 U.S. at 760-62, 95 S.Ct. at 2464-2465; see also Association of American Medical Colleges v. Califano, 569 F.2d at 108
 
 
 [10]
 On December 5, 1980, Congress amended 42 U.S.C. § 1395oo(f)(1) to afford a procedure by which providers can obtain judicial review when the Provider Reimbursement Review Board determines that it is without jurisdiction to decide the question brought before it. This amendment became effective on enactment and so does not apply to our situation. Both before and after the amendment, the provider must go to the Board prior to seeking judicial review, and cannot bring suit in district court without first presenting the controversy to the Board. See Pub.L.No.96-499, Title IX, § 955, 94 Stat. 2647. In the committee report accompanying the 1980 amendment, the law under the 1974 amendment, which controls this case, was described as follows:
 Under present law, a provider's dissatisfaction with a particular determination made by its fiscal intermediary on the basis of a regulation issued by the Secretary must first be brought to the Board, even though the Board may not have the authority to reverse or overrule the regulation. (The Board has no authority, for example, to rule on the legality of the Secretary's regulations but it must, nonetheless, conduct a full review of the challenge.) The effect of this process has been to delay the resolution of controversies for extended periods of time and to require providers to pursue a time-consuming and irrelevant administrative review merely to have the right to bring suit in a U. S. District Court. Title VIII addresses this problem by giving medicare providers the right to obtain immediate judicial review in instances where the Board determines that it lacks jurisdiction to grant the relief sought.
 H.R.Rep.No.96-1167, 9th Cong., 2d Sess. 394, reprinted in (1980) U.S.Code Cong. & Ad.News 5526, 5757. Although the committee recognized that the pre-1980 amendment procedure was inefficient, it found the pre-amendment law to be, as we have held here, that the provider must have brought his claims to the Board before access to federal court would have been available to him.
 
 
 [11]
 The complaint alleges that 1967-1973 Medicare audits reduced Hopewell's reimbursable costs by $59,000 attributable to compensation paid to its owner Betchman
 
 
 [12]
 The Court of Claims is granted jurisdiction under 28 U.S.C. § 1491 to review claims for money damages against the United States. District courts are given original and concurrent jurisdiction with the Court of Claims of claims against the United States for less than $10,000 under 28 U.S.C. § 1346