HADLEY MEMORIAL HOSPITAL, INC., d/b/a Hadley Regional Medical Center; American Hospital Association; Federation of American Hospitals; Catholic Health Association of the United States; California Hospital Association; Colorado Hospital Association; Connecticut Hospital Association; Florida Hospital Association; Greater Houston Hospital Council; Greater New York Hospital Association; Hospital Association of New York State; Idaho Hospital Association; Illinois Hospital Association; Indiana Hospital Association; Kansas Hospital Association; Kentucky Hospital Association; Ohio Hospital Association; Tennessee Hospital Association; Texas Hospital Association; Vermont Hospital Association and Virginia Hospital Association, Plaintiffs-Appellants,

v.

Richard S. SCHWEIKER, Secretary of the Department of Health and Human Services; Leonard D. Shaffer, Administrator of the Health Care Financing Administration—United States Department of Health and Human Services; the Department of Health and Human Services and Robert C. Harder, Secretary of Social and Rehabilitative Services, Defendants-Appellees.

No. 80–1806.

United States Court of Appeals, Tenth Circuit.

Sept. 13, 1982.

Robert A. Klein, Weissburg & Aronson, Inc., Los Angeles, Cal. (Ronald N. Sutter, Washington, D. C., was on the brief), for plaintiffs-appellants.

Anthony J. Steinmeyer, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D. C. (Alfred Mollin, Dept. of Justice, J. Paul McGrath, Asst. Atty. Gen., and Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., James P. Buchele and Jim J. Marquez, U. S. Attys., Topeka, Kan., Samuel D. Turner, Deputy Gen. Counsel, Juan A. del Real, Acting Gen. Counsel, Robert P. Jaye, Deputy Asst. Gen. Counsel, Leslie L. Clune, Atty., Dept. of Health and Human Services, Washington, D. C., were also on the brief), for defendants-appellees Schweiker, Schaffer and The Dept. of Health and Human Services.

Donald A. Frigon, Legal Div., Kan. Dept. of Social and Rehabilitation Services, Topeka, Kan. (Charles V. Hamm, Topeka, Kan., was on the brief), for defendant-appellee Harder.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and KERR,[*] District Judge.

HOLLOWAY, Circuit Judge.

This is an appeal from a judgment dismissing plaintiffs'-appellants' action for lack of subject matter jurisdiction. The action was brought by Hadley Regional Medical Center and twenty associations representing over 6,000 hospitals to challenge the validity of the "Malpractice Rule," a regulatory formula promulgated June 1, 1979, for reimbursement of malpractice costs.[1] The attack on the malpractice rule is made on both substantive grounds and procedural grounds of violations of APA requirements.

Plaintiff Hadley Regional Medical Center is a hospital located in Hays, Kansas and is

---

[*] The Honorable Ewing T. Kerr, United States District Judge for the District of Wyoming, sitting by designation.

1. The only plaintiff which did not join in this appeal is the Indiana Hospital Association.

a provider of medicare and medicaid services. (Complaint ¶ 8, I R. 6). The complaint avers further the member hospitals of the plaintiff associations provide care to millions of medicare beneficiaries each year and are directly and substantially affected by the Malpractice Rule. (Complaint ¶ 12, I R. 7). It is common ground in the briefs on appeal that a substantial number of the associations are providers of services under the Medicare and/or Medicaid programs.[2]

From its inception, Medicare has reimbursed hospitals for their costs, both direct and indirect, on the basis of the utilization of hospital services by Medicare beneficiaries. 42 C.F.R. § 405.402. The Medicare Act requires the Secretary of the Department of Health and Human Services to reimburse hospitals for "reasonable costs" actually incurred for providing services to Medicare beneficiaries. Those reasonable costs have traditionally been determined by aggregating all allowable costs of a hospital, both direct and indirect, and then apportioning those costs between Medicare and other payers on the basis of the utilization of services in the hospital by Medicare beneficiaries.

For purposes of determining costs and accurately allocating them between Medicare and non-Medicare patients, hospitals are required to accumulate their costs in various "cost centers." See generally 42 C.F.R. § 405.453. In addition, provider hospitals are required to accumulate all of their general and administrative ("G and A") costs in G and A cost centers and have reimbursed those costs in the same manner as all other costs, i.e., in proportion to Medicare's utilization of that provider's services. These G and A cost centers have included such items as costs of admissions, billing, workers' compensations, and fire, casualty, accident and malpractice insurance. As the district court noted (R.1045), the effect of the old rule on reimbursement for malpractice insurance premiums was that

> under the old rule, if 30% of a hospital's patient days were Medicare patient days, then 30% of the hospital's malpractice insurance premiums would be reimbursed by the federal government.

On June 1, 1979, the Department of Health and Human Services promulgated 42 C.F.R. § 405.452(b)(1)(ii)(1980), referred to as the Malpractice Rule.[3] This rule sin-

---

**2.** The complaint does not allege the status of the various hospitals which are members of the plaintiff associations specifically so as to show their status as Medicare and/or Medicaid providers. However, the general allegations of the complaint and the positions taken in the briefs on appeal cause us to treat hospital members of the plaintiff associations as providers of Medicare and/or Medicaid benefits. (Brief of Appellants at 8; Brief of Federal Appellees at 11; Brief of Appellee Kansas Department of Social and Rehabilitation Services at 5–6).

In Appellants' Reply Brief at pp. 15–16, plaintiffs assert that not all of the individual hospitals represented in the suit furnish medicare services. The brief asserts that there are a number of hospitals which provide medicaid services but not medicare services. The affidavits cited in support of this assertion are not a part of our record and are merely appended to the reply brief.

Nevertheless, from the specific allegations that the Hadley Hospital is a provider of medicare and medicaid services, and the general statements made in the briefs cited above, we are satisfied that we do have a case presenting the problem of hospitals serving as medicaid providers, discussed in Part IV of this opinion.

**3.** 42 C.F.R. § 405.452(b)(1)(ii) (1980), provides:

(ii) *Exception*: For cost reporting periods beginning on or after July 1, 1979, costs of malpractice insurance premiums and self-insurance fund contributions must be separately accumulated and directly apportioned to Medicare. The apportionment must be based on the dollar ratio of the provider's Medicare paid malpractice losses to its total paid malpractice losses for the current cost reporting period and the preceding 4-year period. If a provider has no malpractice loss experience for the 5-year period, the costs of malpractice insurance premiums of self-insurance fund contributions must be apportioned to Medicare based on the national ratio of malpractice awards paid to Medicare beneficiaries to malpractice awards paid to all patients. The Health Care Financing Administration will calculate this ratio periodically based on the most recent departmental closed claim study.

If a provider pays allowable uninsured malpractice losses incurred by Medicare beneficiaries, either through allowable deductible or coinsurance provisions, or as a result of an award in excess of reasonable coverage limits, or as a governmental provider, such loss-

gles out the costs of malpractice insurance premiums and requires these costs to be reimbursed on a different basis from all other hospital costs. Specifically, it requires the costs of malpractice insurance premiums to be separately allocated and directly apportioned to Medicare "based on the dollar ratio of the provider's Medicare paid malpractice losses for the current cost reporting period and the preceding 4-year period." 42 C.F.R. § 405.452(b)(1)(ii)(1980). If the provider has no paid malpractice claims, then reimbursement is to be based on a national average. The Medicare Rule is applicable to hospital cost reporting periods beginning after June 30, 1979.

While the Malpractice Rule was promulgated specifically under Medicare, it also affects Medicaid reimbursement. By regulation, the Secretary has determined that the methods and standards employed by the state must adopt the Medicare standards and principles for determining reasonable cost reimbursement contained in 42 C.F.R. § 405.402 through § 405.455 (1980), unless the state has an alternative system approved by the Secretary which does not result in greater reimbursement than that allowed under the Medicare principles. 42 C.F.R. § 447.261(b)(2) (1980).

Plaintiffs challenged the substantive and procedural validity of the Malpractice Rule.[4] The district court held, *inter alia*, that due to the bar imposed by 42 U.S.C. § 405(h) against jurisdiction under 28 U.S.C. § 1331 of claims arising under Title II of the Social Security Act, the court lacked subject matter jurisdiction, making

no ruling on the merits. The court expressly rejected five jurisdictional arguments made by the plaintiffs, concluding that:

(1) § 405(h) bars § 1331 jurisdiction over direct challenges to Medicare regulations;

(2) plaintiffs did not satisfy the procedural requirements for judicial review under 42 U.S.C. § 1395*oo;*

(3) jurisdiction under § 1331 does not exist in this case even though the Malpractice Rule is part of the Kansas Medicaid program;

(4) jurisdiction does not exist to consider plaintiffs' procedural objections to the Malpractice Rule; and

(5) jurisdiction does not exist to entertain plaintiffs' action under the mandamus statute, 28 U.S.C. § 1361.

On appeal, plaintiffs argue that the district court erred in holding it lacked jurisdiction. They assert four alternative bases for jurisdiction, which we will now consider.[5]

## I

Plaintiffs argue that 42 U.S.C. § 405(h) (1970) does not bar them, as Medicare providers, from obtaining § 1331 jurisdiction to challenge the validity of the Malpractice Rule. Section 405(h) provides:

(h) The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or gov-

---

es and related direct costs must be directly assigned to Medicare for reimbursement.

4. Plaintiffs challenged the Malpractice Rule in the district court by asserting that

(1) the Malpractice Rule fails to reimburse providers for the "reasonable cost" of malpractice insurance and for "cost actually incurred," in violation of 42 U.S.C. § 1395x(v)(1)(A);

(2) the Malpractice Rule results in the subsidization of Medicare costs by non-Medicare patients in violation of the proscription against such subsidization in 42 U.S.C. § 1395x(v)(1)(A);

(3) in promulgating the Malpractice Rule, the Secretary failed to consider third-party reim-

bursement principles, as required by 42 U.S.C. § 1395x(v)(1)(A);

(4) the Malpractice Rule was issued in violation of the notice and comment procedures of the APA;

(5) the Malpractice Rule violates the substantive requirements of the APA in that it is arbitrary, capricious, and without rational basis;

(6) the Malpractice Rule exceeds the Secretary's rulemaking authority under 42 U.S.C. § 1302.

5. At argument the attorney for plaintiffs stated that they abandoned their claim that they were not required to satisfy the jurisdictional prerequisites of 42 U.S.C. § 1395*oo* (f).

ernmental agency except as herein provided. *No action against the United States, the Secretary, or any officer or employee thereof shall be brought under Section [1331 or 1346] of Title 28 to recover on any claim arising under this subchapter.* (Emphasis added).

This section of Title II of the Social Security Act has been incorporated into the Medicare Act (Title XVIII) "to the same extent" that it applies to Title II of the Social Security Act. 42 U.S.C. § 1395ii (Supp. V 1975).

The effect of § 405(h) was specifically addressed in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522. *Salfi* involved a direct challenge to a regulation requiring surviving spouses and step-children to be related to a deceased for nine months in order to receive social security insurance benefits. The Court held that the district court did not have federal-question jurisdiction under 28 U.S.C. § 1331 to hear the claims of the named plaintiffs due to the bar on jurisdiction imposed by the third sentence of § 405(h). The Court held that this provision is more than a codification of the requirement of administrative exhaustion. It stated that this language is "sweeping and direct" and that "[i]ts reach is not limited to decisions of the Secretary on issues of law or fact. Rather, it extends to any 'action' seeking 'to recover on any [Social Security] claim'—irrespective of whether resort to judicial process is necessitated by discretionary decisions of the Secretary or by his non-discretionary application of allegedly unconstitutional statutory restrictions." 422 U.S. at 762, 95 S.Ct. at 2465.

 In light of the *Salfi* ruling we must agree with the district court that § 405(h) bars judicial review as to the claims of the Medicare providers. *See also Hopewell Nursing Home, Inc. v. Schweiker*, 666 F.2d 34, 38 (4th Cir.); *Rhode Island Hospital v. Califano*, 585 F.2d 1153, 1157 (1st Cir.). The clear language of § 405(h) provides that *no* action shall be brought under § 1331 or § 1346 of Title 28 to recover on any claim arising under Title II of the

Social Security Act. The legislative history of this section does not clearly define the parameters of this section. However, in *Salfi* the Supreme Court broadly interpreted this provision to bar all judicial review except that review provided for in the Act itself, *i.e.*, 42 U.S.C. § 405(g). Furthermore, because § 1395ii carries the same jurisdictional limitations into the Medicare Act, we conclude that § 405(h) limits judicial review of actions arising under the Medicare Act to procedures available under its provisions set out in 42 U.S.C. § 1395oo (Supp. V 1975), which point to ultimate judicial review afforded in § 1395oo (f). *See Hopewell Nursing Home, Inc. v. Schweiker*, 666 F.2d 34, 38 (4th Cir.).

Plaintiffs strenuously contend that § 405(h) only applies by its terms to "any claim" brought by individuals and does not serve as a bar to direct challenges to Medicare regulations. (Brief of Appellant at 34). The argument is made that under Title II, § 405(h) applies only to "individuals" and that it would be incorporated into Title XVIII expressly if it were intended to apply to a case like this.

We disagree. The legislative history of § 405(h) is sparse and provides no clear guidance on this question. The Court's opinion in *Salfi*, however, does point the way. It emphasizes the "sweeping and direct" language that no action shall be brought under § 1331 to recover on any claim arising under the Act. 422 U.S. at 757, 95 S.Ct. at 2462. In light of the language used by the Court, we feel that the opinion is not to be narrowly limited to its facts, such as the bringing of the *Salfi* suit by individuals. Other courts interpreting § 405(h) and *Salfi* have held that the jurisdictional bar applies to actions brought by Medicare providers. *Rhode Island Hospital v. Califano*, 585 F.2d 1153, 1157–58 and n. 4 (1st Cir.); *Association of American Medical Colleges [AAMC] v. Califano*, 569 F.2d 101, 106–107 (D.C. Cir.).

Plaintiffs also argue that § 405(h) only applies to claims for specific statutory entitlements that have been adjudicated by the Secretary at a hearing and does not bar

suits attacking quasi-legislative decisions of the Secretary. (Brief of Appellant at 37–39). They rely on *Salfi* in making this contention. Again they try to limit the opinion to its facts, arguing that plaintiffs there were only seeking to recover specific social security benefits, while plaintiffs here are challenging the validity of a reimbursement formula contained in the Malpractice Rule. We are not persuaded by this argument because, as noted, we again find in § 405(h) and *Salfi* no basis for a limiting interpretation of the bar concerning "any claim." *See Association of American Medical Colleges v. Califano*, 569 F.2d at 106.

Likewise we are not convinced by plaintiffs' arguments based on the futility of attacking the validity of the Malpractice Rule in proceedings under 42 U.S.C. § 1395oo (Supp. V 1975) before the Provider Reimbursement Review Board. They say the Board is powerless to consider their challenges to the Rule and rule in their favor, that futility of such proceedings is obvious, and that the Secretary's limitations preventing the Board from considering the validity of the Rule should be deemed a constructive waiver of the PRRB appeals procedure. (Brief of Appellants at 47–49). We disagree. In *Salfi* it was recognized that the constitutional ruling sought was beyond the Secretary's competence, yet the jurisdictional prerequisite of a "final decision" by the Secretary was said to apply nonetheless. 422 U.S. at 764–67, 95 S.Ct. at 2466–2467. We agree with the reasoning of the courts which have rejected this futility argument by Medicare providers in similar cases. *See Rhode Island Hospital v. Califano*, 585 F.2d 1153, 1157–58 and n.4 (1st Cir.); *Association of American Medical Colleges [AAMC] v. Califano*, 569 F.2d 101, 106–08 (D.C.Cir.).

Therefore we conclude that § 405(h) bars plaintiffs, as Medicare providers, from obtaining § 1331 jurisdiction to challenge the validity of the Malpractice Rule.

II

Plaintiffs argue further that § 1331 jurisdiction is available in any event to challenge the Malpractice Rule on procedural grounds, citing *Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070, 1080 (D.C. Cir.), *inter alia*. They make two procedural challenges to the Rule. First, they argue that the Rule is invalid because it was not promulgated in accordance with the notice and comment procedures of the Administrative Procedure Act.[6] Second, they say that the rule is invalid because the Secretary promulgated it without considering "the principles generally applied by national organizations or established prepayment organizations . . . in computing the amount of payment . . .," as required by 42 U.S.C. § 1395x(v)(1)(A). They contend that such challenges to procedural regularity are outside the scope of § 405(h) and therefore § 1331 jurisdiction exists to challenge the Malpractice Rule on procedural grounds. (Brief of Appellants at 29–30).

Plaintiffs rely heavily on *Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070 (D.C. Cir.). In *Humana*, a proprietary hospital made procedural, statutory and constitutional challenges to a regulation limiting the rate of return on equity capital recoverable as a cost item by providers of services under the Medicare Act. *Humana*

---

**6.** Plaintiffs argue that the Department of Health and Human Services (hereinafter referred to as HHS) is required to promulgate its regulations in accordance with the internal rulemaking requirements of the APA. These requirements are that interested persons have an opportunity to participate in the rulemaking process through the submission of comments, that the agency consider the relevant matter presented, and that the agency adopt a concise general statement of the basis and purpose of the rule.

Plaintiffs maintain that the APA requirements were not complied with in that the result of the rulemaking process was predetermined by a commitment in the President's Budget to save $310 million for fiscal year 1980; a draft of the final rule was circulated within HHS prior to the close of the comment period; the rule contains no statement of basis and purpose that would enable a court to determine that HHS had considered all relevant factors and had reached a rational decision; HHS's response to the hundreds of negative comments it received is contained in seven short paragraphs (44 Fed.Reg. 31641–31642 (June 1, 1979) ]; and the final rule fails to make a response to many of the comments received. (Brief of Appellants at 29–30).

Hospital argued, and the Secretary appeared to concede, that the challenged regulation was not promulgated in compliance with the notice-and-comment requirements of the APA. The issue before the court was whether the rulemaking in question was exempt from the APA's requirements by virtue of the "benefits" exception in § 553(a)(2) of the APA. *Id.* at 1082. The court stated (*id.* at 1080):

> We are mindful that Section 205(h) is "sweeping and direct" in its preclusion of federal-question jurisdiction.... But, in terms, it bars only actions brought "to recover on any claim" arising under the Medicare Act.... Suits questioning the constitutionality of statutory provisions limiting the availability of benefits are encompassed within that class ... as are statutory and constitutional assaults on regulations restricting reimbursement-amount.... We think, however, that when suit is brought simply to vindicate an interest in procedural regularity, Section 205(h) is not summoned into play
> . . . .

Plaintiffs argue that the substantive/procedural distinction should be controlling. They attempt to distinguish *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, relied upon by the district court in rejecting their argument.

■ First, it is clear that the APA itself does not provide an independent grant of jurisdiction to the district courts. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). There the Court determined that the amendment of 28 U.S.C. § 1331(a) in 1976, eliminating the requirement of a specified amount in controversy as a prerequisite to the maintenance of an action brought "against the United States, any agency thereof, or any officer or employee thereof in his official capacity," largely undercuts the rationale for interpreting the APA as an independent jurisdictional provision. *Id.* at 105, 97 S.Ct. at 984. The Court stated that

> the actual text of § 10 of the APA nowhere contains an explicit grant of jurisdiction to challenge agency action in the federal courts. (footnote omitted). Fur-

thermore, even the advocates of jurisdiction under the APA acknowledge that there is no basis for concluding that Congress, in enacting § 10 of the APA, actually conceived of the Act in jurisdictional terms.... Thus, the argument in favor of APA jurisdiction rests exclusively on the broad policy consideration that, given the shortcomings of federal mandamus jurisdiction, such a construction is warranted by the rational policy of affording federal judicial review of actions by federal officials acting pursuant to federal law, notwithstanding the absence of the requisite jurisdictional amount.... We do not find this argument to be compelling in light of Congress' apparent intention by the 1976 amendment to restructure afresh the scope of federal-question jurisdiction ....

> Squarely faced with the question of APA jurisdiction for the first time, Congress' explicit entry into the jurisdictional area counsels against our reading the APA as an implied jurisdictional grant designed solely to fill such an interstitial gap in § 1331 jurisdiction. This is particularly so since neither the text nor the history of the APA speaks in favor of such a reading, and the 1976 Congress, in redefining § 1331, appears not to have envisioned the APA as playing any such stopgap role. (Footnote omitted).

*Id.* at 105–07, 97 S.Ct. at 984–985.

■ In light of this reasoning in *Sanders* and that in *Mathews v. Eldridge*, plaintiffs' argument for § 1331 jurisdiction of their procedural claims is untenable. In *Eldridge*, the plaintiff challenged the constitutionality of the procedures for terminating his disability benefits and sought reinstatement of benefits pending a hearing. The Court held that the non-waivable requirement that a claim for benefits be presented to the Secretary was met. (*Id.* 424 U.S. at 328–30, 96 S.Ct. at 899–900). As to the waivable element of sufficient finality to the administrative decision to satisfy the statutory exhaustion requirement, the Court held there was sufficient finality for review of the merits of the

constitutional claim of denial of procedural due process. Hence, *Eldridge did* require compliance with the claim presentation requirement of § 405(g) for a procedural claim.[7] We likewise conclude that the procedural requirements of 42 U.S.C. § 1395*oo* (Supp. V 1975) apply to the procedural claims asserted here by plaintiffs.

In sum, we conclude that the plaintiffs' argument for jurisdiction of their procedural claims as Medicare providers is unpersuasive and uphold the district court's ruling on this issue.

### III

Further, plaintiffs argue that the district court has jurisdiction under the mandamus statute, 28 U.S.C. § 1361, and that 405(h) does not serve as a bar to the exercise of § 1361 jurisdiction. The Government argues that mandamus relief is barred by § 405(h). The Supreme Court has not decided this question. *See Norton v. Mathews*, 427 U.S. 524, 529–530, 96 S.Ct. 2771, 2774, 49 L.Ed.2d 672 (1976); *Califano v. Yamasaki*, 442 U.S. 682, 698, 99 S.Ct. 2545, 2556, 61 L.Ed.2d 176. In the view we take of the issue we need not decide that point.

28 U.S.C. § 1361 provides that

[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

For mandamus to issue there must be: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and preemptory duty on the part of the defendant to do the action in question; and (3) no other adequate remedy available. *Cervoni v. Secretary of Health, Education and Welfare*, 581 F.2d 1010, 1019 (1st Cir.). In light of these requirements we are persuaded that plaintiffs' complaint states no valid claim for mandamus relief. They have not alleged refusal to perform a duty which is a plainly defined and preemptory duty owed to them, nor have plaintiffs demonstrated that they have no other adequate means to attain the relief desired. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193. They do not show that the procedure for review prescribed in 42 U.S.C. § 1395*oo* would be inadequate. 42 U.S.C. § 1395*oo* (Supp. V 1975) provides that

(a) Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board (hereinafter referred to as the "Board") which shall be established by the Secretary in accordance with subsection (h) of this section . . . .

(d) A decision by the Board shall be based upon the record made at such hearing, which shall include the evidence considered by the intermediary and such other evidence as may be obtained or received by the Board, and shall be supported by substantial evidence when the record is viewed as a whole . . . .

These provisions impose on the PRRB a duty to render a decision on a claim once presented to it. However, it is not claimed that the Secretary here has failed to perform any duty owing to the plaintiffs since they failed to make use of the administrative process provided for the adjudication of their claims. *See Hopewell Nursing Home Inc. v. Schweiker*, 666 F.2d 34, 42 (4th Cir.).

In sum, we conclude that no valid claim for mandamus relief was stated by the plaintiffs as Medicare providers.

### IV

Lastly, we turn to the plaintiffs' argument that in any event they may invoke

---

**7.** In *Humana*, 590 F.2d at 1080 n.76, *Eldridge* was distinguished on the ground that while it involved a procedural due process claim, Eldridge had requested temporary reinstatement of his benefits as an inseparable part of his procedural claim. He did obtain such relief. See 424 U.S. at 325 n.3 and 326, 96 S.Ct. at 898 n.3. Nevertheless, the *Eldridge* opinion treated satisfaction of the jurisdictional element of § 405(g) as a necessary premise to district court jurisdiction and to reaching the merits of the procedural due process claim.

§ 1331 jurisdiction for their claims as Medicaid providers challenging the Malpractice Rule.

Plaintiffs' argument is premised mainly on the fact that while the jurisdictional bar in Title II of the Social Security Act, 42 U.S.C. § 405(h)(1970), is made applicable to the Medicare Act (Title XVIII) by 42 U.S.C. § 1395ii (1970), there is no comparable provision incorporating § 405(h) into the Medicaid Act (Title XIX). Plaintiffs rely on *Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 949–50 (5th Cir.), which found federal question jurisdiction in an action falling under the Medicaid Act rather than the Medicare Act. The Government relies on *Rhode Island Hospital v. Califano*, 585 F.2d 1153, 1162 (1st Cir.). There the court, while recognizing the difficulty of the jurisdictional problem, concluded that

to assume § 1331 jurisdiction over the Hospital's Medicaid claim we would find ourselves in the peculiar posture of hearing a case that consists entirely of a challenge to the limits promulgated under Title XVIII, when we are expressly barred by Title XVIII from entertaining that challenge at this time. To so allow Title XIX to become the back door into Title XVIII, which has barred this case from entrance, would result in an automatic circumvention of the Title XVIII administrative machinery when its cost limitations have been adopted by Title XIX and the provider, as will usually be the case, furnishes services under both Titles.

*Id.* at 1162.

Our case is made even more difficult by a statutory change which has occurred since the ruling by the district court and after argument and submission of this appeal. By supplemental memoranda the parties have advised us of the repeal of the "reasonable cost" provisions in the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(D) (Supp. V 1975) and the adoption of a new statutory standard as 42 U.S.C. § 1396a(a)(13)(A), by the Omnibus Budget Reconciliation Act of 1981 (Pub. L. 97–35, August 13, 1981).[8] The new statute refers to rates in hospitals serving a disproportionate number of low income patients with special needs and to "efficiently and economically operated facil-

---

**8.** The former statute, 42 U.S.C. § 1396a(a)(13)(D) (Supp. V 1975) provided:

[A State Medicaid plan must provide] for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards, consistent with section 1320a–1 of this title, which shall be developed by the State and reviewed and approved by the Secretary and (after notice of approval by the Secretary) included in the plan, except that the reasonable cost of any such services as determined under such methods and standards shall not exceed the amount which would be determined under section 1395x(v) of this title as the reasonable cost of such services for purposes of Title XVIII of this chapter * * *.

The Omnibus Budget Reconciliation Act of 1981, Pub.L. 97–35, August 13, 1981, repealed the above statute and enacted a new provision in lieu thereof, 42 U.S.C. § 1396a(a)(13)(A), which stipulates that a state plan for medical assistance must

(13) provide—

(A) For payment of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State) and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs and provide, in the case of hospital patients receiving services at an inappropriate level of care (under conditions similar to those described in section 1861(v)(1)(G)), for lower reimbursement rates reflecting the level of care actually received (in a manner consistent with section 1861(v)(1)(G)) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality; and such State makes further assurances, satisfactory to the Secretary, for the filing of uniform cost reports by each hospital, skilled nursing facility, and intermediate care facility and periodic audits by the State of such reports; . . . .

ities...." These new provisions were not, of course, before the district court. It may be, as plaintiffs contend, that the new statute strengthens their contention that their claims as Medicaid providers under the Medicaid Act are separate and apart from those under the Medicare Act and beyond the reach of the jurisdictional bar of § 405(h). Plaintiffs' prior contentions were that the Malpractice Rule violated reasonable cost provisions applicable under the Medicare Act, 42 U.S.C. § 1395x(v)(1)(A), inter alia, and that the limitations on reimbursement of Medicaid providers specified that "reasonable cost" determined under the Medicaid provision, 42 U.S.C. § 1396a(a)(13)(D) (Supp V 1975) (now repealed), should not exceed the amount determined as the reasonable cost under the Medicare Act. (Brief of Appellants at 3, 7).

The plaintiffs' position is that the new statute furthers their claim to jurisdiction under § 1331, while the Government argues that the statutory change adds support to its position that jurisdiction is lacking. Neither position takes cognizance of the fact that the case as pleaded, submitted, and decided in the district court did not address the issues concerning the Malpractice Rule in light of the new statute. The case may be materially changed by the new provisions which are being cited by the parties. There may now be such a dichotomy in the Medicare and Medicaid provisions that the jurisdictional issue may be affected. We should decide this case, which seeks declaratory and injunctive relief against application of the Malpractice Rule to Medicaid providers into the future, under the law as it presently exists. See Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476; Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474; Key v. Rutherford, 645 F.2d 880, 883 (10th Cir.); Brotherhood of Railroad Trainmen v. Denver and Rio Grande Western R.R., 370 F.2d 833, 835 (10th Cir.), cert. denied, 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 457.

▮ In the interest of justice we feel we should remand this one part of the case, namely the ruling on the claims of the plaintiffs as Medicaid providers challenging the Malpractice Rule and its effect on Medicaid reimbursement. See 28 U.S.C. § 2106; School District of Abington Township v. Schempp, 364 U.S. 298, 81 S.Ct. 268, 5 L.Ed.2d 89; Ford Motor Co. v. N.L.R.B., 305 U.S. 364, 373, 59 S.Ct. 301, 306, 83 L.Ed. 221; Donald v. Madison Industries, Inc., 483 F.2d 837, 845–46 (10th Cir.); Empire Life Insurance Company of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir.). The new provisions of the law were not before the district court, Donald v. Madison Industries, Inc., supra at 845–46, and in the interest of justice we conclude that a remand on this one part of the controversy is proper. On remand the district court may permit amendment of pleadings, conduct further proceedings, and may reconsider the claims of Medicaid providers in light of the new provisions of the Medicaid Act.[9]

### Conclusion

In sum, we affirm the judgment insofar as it dismisses for lack of jurisdiction under 28 U.S.C. § 1331 the substantive and procedural claims of Medicare providers challenging the application of the Malpractice Rule to their Medicare claims. The judgment is also affirmed as to the dismissal of the claim for mandamus relief by Medicare providers.

The judgment is vacated as to the dismissal of the claims of Medicaid providers challenging the application of the Malpractice Rule to their Medicaid claims and the cause is remanded. The district court should permit amendment of pleadings clarifying the status of Medicaid providers and presenting the issues in light of the amendment to the Medicaid Act discussed in Part IV of this opinion, and should conduct further proceedings for disposition of the case after such reconsideration.

---

9. The court may permit amendment of the complaint to specify the actual status of the various member hospitals in addition to the

Hadley Memorial Hospital so as to show their participation as Medicare providers and/or Medicaid providers. See note 2, supra.